CALKINS et al. v. SMIETANKA, U. S. Internal Revenue Collector, et al.

(District Court, N. D. Illinois, E. D.   January 31, 1917.)

No. 802.

1. INTERNAL REVENUE ☞19(1)—TAX ON GRAIN SALES—OFFER—BASIS OF TAX.
      Under Act Oct. 22, 1914, c. 331, § 22, 38 Stat. 759, imposing on each sale, agreement of sale, or agreement to sell any products at any exchange or board of trade, either for present or future delivery, a tax, for each $100 in value, of one cent, and for each additional $100 or fractional part in excess of $100 one cent, offers to sell grain made subject to deferred acceptance, only a small percentage of which developed into sales and on which the brokers received only $10 for each 10,000 bushels sold, are taxable on the basis of the total price for which the seller agrees to sell, not merely on the basis of what the broker is to receive, since on the latter basis no tax would be due on the great majority of the offers and only a small amount on the largest of them, and, if that basis were to apply to offers, it should apply also to sales and agreements of sale which would lead to an absurdity.
      [Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 39, 40.]

2. INTERNAL REVENUE ☞19(1)—TAX ON GRAIN SALES—SUCCESSIVE SALES.
      Act Oct. 22, 1914, § 22, imposing a tax on each sale, agreement of sale, or agreement to sell products at any exchange or board of trade, and requiring every such sale or agreement to be accompanied by a bill, memorandum, agreement, or other evidence thereof, to which a stamp or stamps in value equal to the amount of the tax shall be affixed, imposes a tax on each sale or agreement to sell any grain, though during the day several separate sales are made of the same lot of grain or parts thereof

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and at the close of the day the only memorandum made shows the transfer from the original seller to the last buyer or buyers, since to hold otherwise would be to permit the parties by their own action to relieve themselves from liability for the tax after it had accrued.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 39, 40.]

3. INTERNAL REVENUE ☞25—POWERS OF COMMISSIONER—ASSESSMENT OF DELINQUENT STAMP TAX.

Rev. St. § 3176, as amended by Act Sept. 8, 1916 (Comp. St. Ann. 1916, § 5899), provides that the Commissioner of Internal Revenue shall assess all taxes other than stamp taxes as to which returns or lists are made by a collector or deputy collector as theretofore provided. Section 3182 (Comp. St. 1913, § 5904) authorizes the Commissioner of Internal Revenue to make inquiries, determinations, and assessments of all taxes imposed by that title or accruing under any former internal revenue act, where such taxes had not been duly paid by stamp at the time and in the manner provided by law, and that all provisions of law for the ascertainment of liability to any tax, or the assessment or collection thereof, shall apply, so far as necessary, to those proceedings. Act Oct. 22, 1914, § 22, imposes a stamp tax on sales and agreements to sell products at boards of trade, and section 23 provides that all administrative, special, or stamp provisions of law, including the law relating to the assessment of taxes, should extend to that act, and that any one evading or attempting to evade the taxes thereby imposed should be subject to a penalty of double the amount of the taxes to be assessed and collected as other penalties incurred under internal revenue laws are assessed and collected. *Held,* that Rev. St. § 3176, as amended, did not take away from the commissioner the power given by the other statutes to assess the tax on sales of grain, on memoranda of which the stamps were not affixed, since, if Congress had intended to limit that power by the amending statute, it would have amended section 3182, not section 3176.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 72, 73.]

4. INTERNAL REVENUE ☞25—POWERS OF COMMISSIONER—ASSESSMENT OF DELINQUENT STAMP TAX.

Rev. St. § 3182, authorizing the Commissioner of Internal Revenue to make assessments of all taxes and penalties imposed by that title, authorizes him to make assessment of all taxes that were imposed by Congress and which come under the heading of internal revenue.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 72, 73.]

5. INTERNAL REVENUE ☞25—ASSESSMENT OF TAX—INJUNCTION—STATUTE.

Rev. St. § 3224 (Comp. St. 1913, § 5947), providing that no suit to restrain the assessment or collection of any tax shall be maintained in any court, forbids the issuance of an injunction to restrain the Commissioner of Internal Revenue from assessing the taxes on sales of grain to which no stamps were affixed; the only remedy of the taxpayer being by suit to recover the tax after payment under Rev. St. § 3226 (Comp. St. 1913, § 5949).

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 72, 73.]

6. INTERNAL REVENUE ☞25—ASSESSMENT OF TAX—PRODUCTION OF BOOKS.

Rev. St. § 3173 (Comp. St. 1913, § 5896), authorizing the Commissioner of Internal Revenue to require persons who fail or refuse to make proper returns to produce their books, authorizes the commissioner to compel the production of books of grain brokers who have failed to pay the stamp tax imposed on sales of grain by Act Oct. 22, 1914, § 22.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 72, 73.]

7. INTERNAL REVENUE ☞25—ASSESSMENT OF TAX—STATUTES—VALIDITY—PRODUCTION OF BOOKS.

Rev. St. § 3173, authorizing the Commissioner of Internal Revenue to require persons who fail or refuse to make proper returns to produce their books, is not unconstitutional, since an order to produce books is

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

not violative of the rights of a witness, though such rights may be in-vaded after his appearance.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 72, 73.]

8. INTERNAL REVENUE ⊜⇒25—ASSESSMENT OF TAX—INJUNCTION—"ASSESS-MENT."

Rev. St. § 3224, providing that no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court, applies to a suit to restrain proceedings to make the assessments, since assessment cannot fairly be limited to the mental act of the officer who determines the amount of the tax, but includes the preliminary investigation as well as the final determination.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 72, 73. For other definitions, see Words and Phrases, First and Second Series, Assessment.]

In Equity. Suit for injunction by Lucius A. Calkins and others against Julius F. Smietanka, as United States Collector of Internal Revenue of Chicago, and another. Application for injunction denied.

Henry S. Robbins, of Chicago, Ill., for complainants.

Charles F. Clyne, U. S. Atty., and Joseph B. Fleming, Asst. U. S. Atty., both of Chicago, Ill., for defendant.

EVANS, Acting District Judge. The plaintiffs seek through this action to have the court decree:

(1) "That the defendants are not entitled to have, or to have access to, the books of the plaintiffs, or any member of the Board of Trade, for the purpose of assessing or collecting any tax upon any 'sale, agreement to sell, or agreement of sale,' made on the Chicago Board of Trade during the time the act to increase the internal revenue, enacted October 22, 1914 [c. 331, 38 Stat. 745], was in force."

(2) "That certain 'transfers' be declared not taxable under the said act."

(3) "That certain 'offers' be declared not taxable when the amount received by the broker therefrom does not exceed $100."

(4) "That a temporary injunction be issued, which upon final hearing be made permanent, enjoining defendants from further demanding to have produced the books of any member and enjoining defendants from taking proceedings to compel the inspection and production of such books, and enjoining defendants from proceeding to collect by distraint any tax upon the 'transfers' or 'offers' above described."

The bill was supported by affidavits and opposed by counter affidavits, which showed the manner in which business is conducted on the Chicago Board of Trade.

[1] It appeared that members of the Board of Trade considered what in their parlance is termed an "offer," was not subject to a stamp tax, unless the amount, which the member was to receive in case the said "offer" was accepted, exceeded $100. Members very frequently post "offers" which are in the following form:

Offer Made Subject to Deferred Acceptance

Chicago ...... 191...

We will sell ...... bushels of contract grade of ...... at ...... per bushel for delivery during ...... 191... same to be delivered in store in regular

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

warehouses under the rules of the Board of Trade of the City of Chicago. This offer is subject to acceptance by you until the closing hour for regular trading on ...... 191...

............

Only a very small per cent. of these "offers" ever developed into sales.

All parties agree, that such an "offer" came within the provisions of section 22 of the act referred to, and in view of the decision in the case of Treat v. White, 181 U. S. 264, 21 Sup. Ct. 611, 45 L. Ed. 853, was taxable under certain circumstances. The government took the position that such an "offer" was taxable whenever the price for which the commodity therein named was to be sold, exceeded $100. The plaintiffs contended that such "offers" were taxable only when the amount received by the broker for negotiating the deal exceeded $100. Ten dollars was paid for the execution of each offer of 10,000 bushels.

The portion of section 22 of the act under consideration reads as follows:

"Upon each sale, agreement of sale, or agreement to sell, any products or merchandise at any exchange, or board of trade, or other similar place, either for present or future delivery, for each $100 in value of said sale or agreement of sale or agreement to sell, 1 cent, and for each additional $100 or fractional part * * * in excess of $100, 1 cent: Provided, that on every sale or agreement of sale or agreement to sell as aforesaid there shall be made and delivered by the seller to the buyer a bill, memorandum, agreement, or other evidence of such sale, agreement of sale, or agreement to sell, to which there shall be affixed a lawful stamp or stamps in value equal to the amount of the tax on such sale. And every such bill, memorandum, or other evidence of sale or agreement to sell shall show the date thereof, the name of the seller, the amount of the sale, and the matter or thing to which it refers; and any person or persons liable to pay the tax as herein provided, or anyone who acts in the matter as agent or broker for such person or persons, who shall make any such sale or agreement of sale, or agreement to sell, or who shall, in pursuance of any such sale, agreement of sale, or agreement to sell, deliver any such products or merchandise without a bill, memorandum, or other evidence thereof as herein required, or who shall deliver such bill, memorandum, or other evidence of sale, or agreement to sell, without having the proper stamps affixed thereto, with intent to evade the foregoing provisions, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall pay a fine of not exceeding $1,000, or be imprisoned not more than six months, or both, at the discretion of the court."

Plaintiffs' contention that the stamp tax is collectible on an "offer" only when the broker receives a sum in excess of $100 is, in the light of all the surrounding circumstances, not persuasive. It must be, and is, admitted that under existing circumstances, if plaintiffs' contention be adopted, practically all "offers" would go untaxed, for the transaction must be large indeed, before the broker would exceed $100. If plaintiffs' contentions were adopted, all such "offers" involving transactions of less than 100,000 bushels would go untaxed, while "offers" involving the sale of 200,000 bushels would be taxed one cent. "Offers" to sell quantities aggregating 1,000,000 bushels (of wheat, of the value of $1,750,000) would be subject to a tax of only nine cents.

Assuming Congress intended to impose a tax on "offers," then such a construction would lead to an absurdity.

Again, Congress placed the three kinds of agreements on an equal basis. The act imposed a tax upon (A) each sale; (B) each agreement of sale; (C) each agreement to sell. The basis for determining the amount of the tax is the same in each case. Could one successfully contend that the basis of the tax of one cent for each $100 in value should be in the case of a sale, or an agreement of sale, the amount the broker receives for negotiating the sale? Such a tax in the case of a sale would admittedly be based on the selling price stipulated in the sale, or agreement of sale.

It follows that the total price at which each seller agrees to sell must be the basis upon which the tax on "offers" is computed.

The argument of the counsel that such a conclusion works apparent hardship upon these plaintiffs and others similarly situated, however true, goes to the merits of the legislation, but not to the question of construction.

[2] Plaintiffs further seek the injunction because the revenue officers are attempting to assess a tax upon certain transfers that the plaintiffs say are not subject to tax. In their bill and accompanying affidavits, they illustrate the situation as follows:

"That one business condition giving rise to said transfers is when A., having an order to buy, say, 15,000 bushels of wheat, is unable to secure from any one at that moment bidding in the pit an offer to sell 15,000 bushels, but B. is then offering to sell 25,000 bushels thereof, and A., in order to buy said 15,000 bushels, accepts B.'s offer to sell 25,000 bushels, and immediately offers 10,000 bushels at the same price, and, that being accepted by another member in the said pit, A., before the close of the market hours, asks B. to put down upon his trading cards, and B. agrees to and does so put down, the sale of 10,000 bushels of his said 25,000 bushels as a sale to C., whereupon the proper changes are made in the entries on the trading cards of such parties to manifest such change or substitution, the original transaction between A. and B. being originally entered on the trading card of A. as a purchase of 25,000 bushels from B. and on the trading card of B. as a sale of 25,000 bushels to A., and such original entries being during said trading hours erased and changed so as to show a purchase by A. from B. of 15,000 bushels, and a purchase by C. from B. of 10,000 bushels."

In other words, it appears that A. may offer to sell a large quantity of wheat, which offer is accepted by B., and B. makes a resale to C., who in turn makes another resale to D., and so on, until at the close of the day the wheat belongs to Z. In the clearing house settlement that evening, the only transaction of interest to the members is the final transfer of grain to Z. The government contends that the stamp tax is imposed on each of these transactions. The plaintiffs and other members construed the law as imposing a tax on but one transaction.

Another situation may arise out of transfers like the following: A. offers 50,000 bushels of wheat at a certain price, which is accepted by B. for a customer. Later B., on behalf of another customer, offers A. 50,000 bushels, which offer is accepted by A. for an entirely different customer. The prices may be the same, and in the final settlements between A. and B. their books balance. Should there be two transfer taxes.

Again, plaintiffs describe another situation where, on account of the different orders from different customers, a sale by A. to B. is later canceled. In other words, A. consents to "call off the trade." Plaintiffs contend that no tax is required. The government insists that two transfer taxes are due.

The statute above quoted is clear and explicit. Congress, in its wisdom, saw fit to impose a special tax on transactions had on the Board of Trade. The Supreme Court declared an act almost identical to the one under consideration as constitutional. Nicol v. Ames, 173 U. S. 509, 19 Sup. Ct. 522, 43 L. Ed. 786. Both the intent of Congress and the obvious meaning of the words used, lead the court to but one conclusion. The tax becomes due and payable by virtue of certain agreements being made. Parties, after they have made the agreement and exposed themselves to the tax, cannot meet and agree to exempt themselves from the tax. Agreements, subject to a tax, cannot later be relieved of the burden by new agreements. It is perfectly plain to the court that no agreement that is once subject to a tax can later be relieved of that burden by any action of the parties.

The fact that the agreements made were not, in all cases, reduced to writing with the stamp attached, cannot relieve the agreements from the tax. Congress imposed upon all members transacting business the duty of reducing their agreement to writing. Plaintiffs might as well contend that they were relieved of their taxes because they failed to pay them promptly, and when due, as to say that they are relieved from the stamp tax because they did not reduce their agreements to writing. They cannot plead their own neglect to relieve themselves of this tax. Any other conclusion would place a premium on misconduct.

[3] Plaintiffs further contended that, even though they were subject to a tax in the amount claimed by the government, the defendants had no right under the statute to demand the production of their books or make assessments of this tax, due from any one of them, or to collect this tax by distraint.

A well-prepared argument was made in support of these contentions by plaintiffs' attorney. The turning point in the argument revolves about plaintiffs' claim that defendants are powerless to make an assessment of a stamp tax.

Plaintiffs do not deny defendants' authority to assess taxes in certain cases, but deny that stamp taxes can be so assessed, and refer to various sections of the statute, notably sections 3173 and 3176, R. S. (Comp. St. 1913, §§ 5896, 5899), for support. Particular reference is made to section 3176, as amended by the Act of September 8, 1916 (Comp. St. Ann. 1916, § 5899), as showing that the power to assess stamp taxes is not possessed by the commissioner. That act, as amended, reads in part as follows:

"The Commissioner of Internal Revenue shall assess all taxes, other than stamp taxes, as to which returns or lists are so made by a collector or deputy collector."

Standing alone, this quotation would seem to justify their position. Section 3176, however, while one of the general administrative acts pertaining to the assessment and collection of internal revenue, is not

the section that grants to the collector the power and authority to make assessments. This will be seen by reading section 3182, R. S. (Comp. St. 1913, § 5904), herewith quoted:

"The Commissioner of Internal Revenue is hereby authorized and required to make the inquiries, determinations, and assessments of all taxes and penalties imposed by this title, or accruing under any former internal revenue act, where such taxes had not been duly paid by stamp at the time and in the manner provided by law, and shall certify a list of such assessments when made to the proper collectors respectively, who shall proceed to collect and account for the taxes and penalties so certified. * * * And all provisions of law for the ascertainment of liability to any tax, or the assessment or collection thereof, shall be held to apply, so far as may be necessary, to the proceedings herein authorized and directed."

Congress, by section 3176, imposed upon the collectors and deputy collectors the duty of making returns or lists from such knowledge or information as the collectors or deputy collectors possessed. Upon the returns or lists made by the collectors or deputy collectors, the Commissioner of Internal Revenue makes assessments of taxes "other than stamp taxes," and imposes the penalties therein authorized. Section 3176 is not a limitation of the power granted by section 3182.

[4] Section 3182 is most general, comprehensive, and inclusive, and was unquestionably intended to give, and did give, the Commissioner of Internal Revenue authority to make assessments "of any tax imposed by this title," being "Title XXXV—Internal Revenue." This is but one section of the chapter dealing with the assessment and collection of taxes. But Congress referred to the broader heading of "internal revenue," when it used the words "imposed by this title." In other words, Congress gave the Commissioner of Internal Revenue authority to make assessment of all taxes that were imposed by congressional enactment, and which came under the heading of "internal revenue." That the act, imposing the burden, here in dispute, came within this heading, there can be no doubt.

If Congress intended to limit this power by amendment through the act of September 8, 1916, it would have proceeded to amend section 3182, and not to amend section 3176.

A further indication of congressional intent, as well as an express grant of power to the commissioner, is found in section 23, which reads as follows:

"That all administrative, special, or stamp provisions of law, including the law relating to the assessment of taxes, so far as applicable, are hereby extended to and made a part of this act, and every person, firm, company, corporation, or association liable to any tax imposed by this act, or for the collection thereof, shall keep such records and render, under oath, such statements and returns, and shall comply with such regulations as the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, may from time to time prescribe, and every such person, firm, company, corporation, or association who evades or attempts to evade any of the taxes imposed by this act, or shall fail to truly account for and pay all taxes collected by them under this Act, or any regulations issued thereunder, shall be subject to a penalty of double the amount of the taxes evaded or attempted to be evaded or unlawfully withheld, to be assessed and collected as other penalties incurred under internal revenue laws are assessed and collected; and for the expense connected with the assessment and collection of the taxes provided by this act there is hereby appropriated $200,000," etc.

The court therefore concludes that the Commissioner of Internal Revenue is authorized and empowered to make assessments of stamp taxes.

[5] Having the power to make the assessment for unpaid stamp taxes, the query arises: Can the court, by injunction, restrain the officer from making an assessment?

The defendants stand in a peculiarly protected position, when under color of right they seek to assess a tax against a defaulting taxpayer. Congress has provided, by section 3224, R. S. (Comp. St. 1913, § 5947), that:

"No suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court."

This section has been applied in a great number of cases, one of the most recent being Dodge v. Osborn, 240 U. S. 120, 36 Sup. Ct. 275, 60 L. Ed. 557. There the court quotes, approving, the following language found in Snyder v. Marks, 109 U. S. 193, 194, 3 Sup. Ct. 157, 160 (27 L. Ed. 901):

"The inhibition of Rev. Stat. § 3224, applies to all assessments of taxes, made under color of their offices, by internal revenue officers charged with general jurisdiction of the subject of assessing taxes against tobacco manufacturers. The remedy of a suit to recover back a tax after it is paid is provided by statute, and a suit to restrain its collection is forbidden. The remedy so given is exclusive, and no other remedy can be substituted for it. * * * Cheatham v. United States, 92 U. S. 85, 88 [23 L. Ed. 561]. And again in State Railroad Tax Cases, 92 U. S. 575, 613 [23 L. Ed. 663], it was said by this court that the system prescribed by the United States in regard to both customs duties and internal revenue taxes, of stringent measures, not judicial, to collect them, with appeals to specified tribunals, and suits to recover back moneys illegally exacted, was a system of corrective justice intended to be complete, and enacted under the right belonging to the government to prescribe the conditions on which it would subject itself to the judgment of the courts in the collection of its revenues. In the exercise of that right, it declares, by section 3224, that its officers shall not be enjoined from collecting a tax claimed to have been unjustly assessed, when those officers, in the course of general jurisdiction over the subject-matter in question, have made the assignment (assessment) and claim that it is valid."

The court further says:

"And this doctrine has been repeatedly applied until it is no longer open to question that a suit may not be brought to enjoin the assessment or collection of a tax because of the alleged unconstitutionality of the statute imposing it. Shelton v. Platt, 139 U. S. 591 [11 Sup. Ct. 646, 35 L. Ed. 273]; Pittsburg, etc., Ry. v. Board of Public Works, 172 U. S. 32 [19 Sup. Ct. 90, 43 L. Ed. 354]; Pacific Whaling Co. v. United States, 187 U. S. 447, 451, 452 [23 Sup. Ct. 154, 47 L. Ed. 253]."

While the decision in Snyder v. Marks dealt with the tobacco tax, the court in the case of Dodge v. Osborn, dealt with the income tax feature of the identical act here under consideration.

Section 3224, R. S., was enacted to insure the prompt collection of the government's revenue. Section 3226, R. S. (Comp. St. 1913, § 5949) provides the only method for an aggrieved taxpayer to obtain redress. Snyder v. Marks, 109 U. S. 189, 3 Sup. Ct. 157, 27 L. Ed. 901. Supplementing these provisions of the statutes and decisions above quoted,

240 F.—10

is the equity rule that denies the jurisdiction of a court of equity of any case wherein there is an adequate remedy at law. Congress unquestionably concluded that it had provided the taxpayer with an adequate remedy at law, when it gave him the right to sue and recover back the tax illegally assessed.

It follows therefore that the plaintiffs' request to restrain the collection of the tax by any particular manner must be denied.

[6, 7] Plaintiffs' final contention is that they are entitled to an injunction to restrain the government from taking steps to compel the production of their books, even though the Internal Revenue Commissioner is authorized to make and collect an assessment in a case like the present one; in other words, it is claimed that a court of equity would not violate section 3224 if it restrained the officers from compelling plaintiffs and others similarly situated to produce their books. An elaborate argument is presented to show: First, that section 3175, R. S., does not authorize the production of books in a case like the present; and, second, that if section 3173 should be so construed as to include taxpayers situated like plaintiffs (subject to a stamp tax past due) the act is unconstitutional.

I am unable to accept either contention. An order to produce books is not violative of any constitutional right. In re Chadwick, 5 Fed. Cas. No. 2,570, p. 401; In re Lippman, 15 Fed. Cas. 8,382, p. 572; United States v. Distillery No. 28, 25 Fed. Cas. 14,966, p. 868; Perry v. Newsome, 19 Fed. Cas. No. 11,009, p. 290.

The witness' constitutional rights may be invaded after his appearance, but even then is dependent upon his willingness to waive his rights to refuse to testify.

[8] If section 3224 is given the liberal construction that its purpose demands, then it applies to actions brought to prevent officers from proceeding to make the assessment as well as to making assessments.

The word "assessment," as used in this section, cannot fairly be limited to the mental act of the officer who determines the amount. It must include the preliminary investigation as well as the final determination, for one is as important as the other.

What the government accomplished by this section was the prevention of suits that delayed it in the determination and collection of its taxes.

It follows that the application for an injunction must be denied, and the temporary restraining order heretofore granted should be vacated.'