[No. 25913. *En Banc.* January 9, 1936.]

GANGE LUMBER COMPANY, *Respondent,* v. H. H.
HENNEFORD *et al., Appellants.*[1]

*The Attorney General* and *R. G. Sharpe, Assistant,*
for appellants.

*W. H. Abel,* for respondent.

*Davis & Groff* and *Theodore B. Bruener, amici
curiae.*

BLAKE, J.—This action challenges the right of the
tax commission to exercise certain powers granted by
the legislature under subdivisions Seventh and Eighth
of § 1, chapter 127, Laws of 1935, p. 378, Rem. 1935
Sup., § 11091 [P. C. § 6874-5a]. The challenge, in
effect, goes to the constitutionality of certain portions
of those subdivisions. Before discussing the ques-

[1]Reported in 53 P. (2d) 743.

tioned grants of power, it will be well to ascertain the historical background of the act itself.

The act is an amendment of § 2, chapter 115, Laws of 1905, p. 225, as amended by § 1, chapter 220, Laws of 1907, p. 508. Chapter 115, Laws of 1905, p. 224, was the act creating the state board of tax commissioners. Section 2 of the act related to the powers of the board, the section consisting of twelve subdivisions. The Seventh subdivision provided:

"*Seventh:* To require individuals, partnerships, companies, associations and corporations to furnish information as to their capital, funded debts, value of property, earnings, taxes and all other facts called for on these subjects, so that the commission may ascertain the relative burdens borne by all kinds and classes of property within the State."

The Eighth subdivision was as follows:

"*Eighth:* To summon witnesses to appear and testify on the subject of property earnings, taxes, or upon any matter deemed material to the investigation of the system of taxation, and the expenditure of public funds for State, county, district and municipal purposes."

In 1907, the legislature reenacted § 2, chapter 115, Laws of 1905, amending subdivision Eighth only, to the following effect:

"Such summons to be served in like manner as a subpœna issued out of the superior court and to be served by the sheriff of the proper county, and such service certified by him to said Board without compensation therefor. Persons appearing before said Board in obedience to a summons shall in the discretion of the Board receive the same compensation as witnesses in the superior court, to be audited by the State Auditor on the certificate of said Board." Laws of 1907, p. 510.

It is to be observed that this amendment essentially is designed to make effective the power already granted in the act of 1905, namely, to summon witnesses.

Chapter 127, Laws of 1935, p. 378, Rem. 1935 Sup., § 11091 [P. C. § 6874-5a], is likewise a reenactment of § 2, chapter 115, Laws of 1905, p. 225. There are certain addenda to the First and Tenth subdivisions, with which we are not here concerned. The Seventh subdivision is almost identical with that in the act of 1905, except that there has been added the following:

". . . and for these purposes their records, books, accounts, papers and memoranda shall be subject to production and inspection, investigation and examination by said commission, or any employee thereof designated by said commission for such purpose, and any or all real and/or personal property in this state shall be subject to visitation, investigation, examination and/or listing at any and all times by the commission or by any employee thereof designated by said commission."

To subdivision Eighth there has been added a proviso to the effect that a taxpayer cannot be required to testify outside the county of his residence or wherein his office or principal place of business is located. The only change in the enacting clause of the subdivision is that witnesses may be required to "testify on the subject of capital, funded debts, investments . . . and all other facts called for on these subjects."

From a comparison of these subdivisions, it is apparent that, with one exception, the powers of the state tax commission have not been changed in substance (and only slightly in form) for thirty years. For thirty years, it has had the power to require taxpayers

". . . to furnish information as to their capital, funded debts, value of property, earnings, taxes and all other facts called for on these subjects;"

and for thirty years it has had the power

". . . to summon witnesses to appear and testify on the subject of property earnings, taxes, or upon any matter deemed material to the investigation of the system of taxation."

The tax commission sent to plaintiff two questionnaires, designed to elicit the information contemplated by the statute. Plaintiff brought this action to enjoin the tax commission from (1) requiring plaintiff to furnish the information, (2) requiring it to produce its books, records and papers, and (3) requiring any of its officers or employees to testify concerning the information sought. The court granted a sweeping injunction, the effect of which is to render chapter 127, p. 378, Rem. 1935 Sup., § 11091 [P. C. § 6874-5a], nugatory in certain respects and utterly ineffective in all. The tax commission has appealed.

Essentially, the only additional power delegated to the commission by chapter 127, Laws of 1935, p. 378, Rem. 1935 Sup., § 11091 [P. C. § 6874-5a], is that of authorizing it to inspect and require the production of the taxpayer's "records, books, accounts, papers and memoranda." It is against this power that respondent primarily directs its attack, on the ground that it violates the constitutional guarantees against (1) unreasonable search and seizure, (2) the taking of property without due process of law, and (3) compelling the production of evidence against oneself in a criminal proceeding.

There is a striking unanimity of authority sustaining such inquisitorial powers as here questioned, granted to taxing agencies by legislative authority. *In re Meador*, 16 Fed. Cas. No. 9,375, p. 1294; *Stanwood v. Green*, 22 Fed. Cas. No. 13,301, p. 1077; *Calkins v. Smietanka*, 240 Fed. 138; *United States v. First Nat. Bank of Mobile*, 295 Fed. 142; *Hubbard v. Mellon* (Dist. Columbia, C. C. A.), 5 F. (2d) 764; *In re International Corp. Co.*, 5 Fed. Supp. 608; *Cooley v. Bergin*, 27 F. (2d) 930; *Bolich v. Rubel*, 67 F. (2d) 894; *Interstate Forwarding Co. v. Vineyard*, 3 S. W. (2d) (Tex. Civ. App.) 947; *Washington Nat. Bank v. Daily*, 166

Ind. 631, 77 N. E. 53; *In re Chase Nat. Bank,* 155 Misc. 595, 280 N. Y. S. 440.

Space will not permit an analysis of all of these cases. We shall content ourselves with an examination of three or four which seem to us to be peculiarly pertinent. Before doing so, however, it may be well to advert to the fact that nearly all of them hark back to *McCulloch v. Maryland,* 17 U. S. 315 (4 Wheat. 316), as authority. Various quotations from the opinion of the chief justice are cited in support of the different decisions. The most pertinent are to the following effect:

"Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional. . . .

"The power of taxing the people and their property, is essential to the very existence of government, and may be legitimately exercised on the objects to which it is applicable, to the utmost extent to which the government may choose to carry it. The only security against the abuse of this power, is found in the structure of the government itself. In imposing a tax, the legislature acts upon its constituents. This is, in general, a sufficient security against erroneous and oppressive taxation. . . .

"We are not driven to the perplexing inquiry, so unfit for the judicial department, what degree of taxation is the legitimate use, and what degree may amount to the abuse of the power."

Turning now to some of the cited cases, *In re Meador, supra,* is the earliest which has been called to our attention. Pursuant to authority delegated to him by the internal revenue act of 1868, a supervisor issued a summons to Meador & Brothers, "requiring them to appear before him . . . and to testify under oath, and to produce their books, papers, etc."

The court, disposing of constitutional objections similar to those presented in the instant case, said:

"Two questions arise for adjudication. The one is based upon the fourth amendment of the constitution, which says 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.' The other is found among the enumerated private rights in the fifth amendment, and is as follows: No one shall 'be deprived of life, liberty, or property, without due process of law.' . . .

"The objection made to the power given to the supervisor by the statutes is, as just mentioned, that it is forbidden by the fourth amendment to the constitution. But this is a civil proceeding, and in no wise does it partake of the character of a criminal prosecution; no offense is charged against the Meadors. Therefore, in this proceeding, the fourth amendment is not violated. . . .

"The second question in this branch of the case grows out of that important private right secured to the citizen by the fifth amendment, that he shall not 'be deprived of life, liberty, or property, without due process of law.' . . .

"These internal revenue or tax laws were characterized as being not only repugnant to the constitution, but also unreasonably burdensome. With the most minute attention I examined those portions of the acts of July 13, 1866, and July 20, 1868, presented for my consideration; and carefully sought to ascertain whether they were in conflict with any of the provisions of the constitution. My conclusion on that question has been expressed. I do not concur with counsel, that these laws are unreasonably burdensome. But even if they are, nay, even if they are oppressive, and unjust modes are employed for their enforcement, the remedy lies with congress, and not with the judiciary. By enacting these laws congress has exercised the con-

stitutional power of taxation, and the courts have no power to interfere.''

Another comparatively early case dealing with a statute authorizing the assessor to require the taxpayer to submit his books and papers for inspection is *Washington Nat. Bank v. Daily, supra.* The supreme court of Indiana there said:

''In considering the constitutional questions, it is well to bear in mind that it is agreed on all hands that the power to tax is an attribute of sovereignty, a prerogative of the state that is indispensably necessary, not only to the public welfare, but to the maintenance of the government, and therefore yields to no limitation and no restriction by courts, beyond what the people themselves have set up in the fundamental law. . . .

''The legislature has, under § 1, Art. 10, of our Constitution the power to levy taxes, and to 'prescribe such regulations as shall secure a just valuation for taxation of all property.' The power here expressly granted embraces the right to adopt any reasonable regulation that may seem to the legislature necessary and efficient in making the taxes exacted by it not only 'uniform and equal,' but in like manner borne by all the assessable property of the State. Federal courts have gone so far as to hold that in matters of revenue the regulations that congress sees fit to establish must prevail without reference to their reasonableness. . . .

''The measures taken to secure the inspection of the books are reasonable, appropriate and prescribed by law, and the case seems in nowise different in principle from what it would have been if the evidence had been called for by a judicial tribunal in an action pending before it. The order upon the bank to submit the books and papers specified to the inspection of appellee was sanctioned by constitutional and legislative authority, and therefore did not contemplate an unreasonable search and seizure.''

We have quoted from the *Meador* and *Washington Nat. Bank* cases at considerable length, for sev-

eral reasons. The *Meador* case is apparently the leading case on the subject. It is cited as authority in nearly all of the subsequent cases. But above all, both cases are the most elaborately and cogently reasoned decisions we have read on the subject.

Some of the subsequent cases have dealt very summarily with the questions here raised. Examples of such treatment are *Calkins v. Smietanka, supra,* and *Bolich v. Rubel, supra.* In the former case, the court said:

"'Plaintiffs' final contention is that they are entitled to an injunction to restrain the government from taking steps to compel the production of their books, even though the Internal Revenue Commissioner is authorized to make and collect an assessment in a case like the present one; in other words, it is claimed that a court of equity would not violate section 3224 [R. S.] if it restrained the officers from compelling plaintiffs and others similarly situated to produce their books. An elaborate argument is presented to show: First, that section 3175, R. S., does not authorize the production of books in a case like the present; and, second, that if section 3173 should be so construed as to include taxpayers situated like plaintiffs (subject to a stamp tax past due) the act is unconstitutional.

"'I am unable to accept either contention. An order to produce books is not violative of any constitutional right. *In re Chadwick,* 5 Fed. Cas. No. 2,570, p. 401; *In re Lippman,* 15 Fed. Cas. No. 8,382, p. 572; *United States v. Distillery No. 28,* 25 Fed. Cas. No. 14,966, p. 868; *Perry v. Newsome,* 19 Fed. Cas. No. 11,009, p. 290.'"

In the latter case, the commissioner of internal revenue made demand on the taxpayer for a *re-examination* of his books, pending an appeal to the board of tax appeals. Speaking of the demand for a second examination and objections raised on the ground that the taxpayer's constitutional rights were thereby violated, the court said:

"No doubt the power may be abused, but the taxpayer is to some extent protected by the fact that the Commissioner must demand the second examination in person (section 1105, Act of 1926 [26 USCA § 1248]), and because the court, before applying any sanctions under section 617 (a), would probably have power to prevent plain oppression, of which there was no evidence here.

"The constitutional objections appear to us frivolous. A taxpayer may refuse to file any return whatever and take his chances; in that case he can probably stand upon his constitutional privileges against producing any evidence against himself. But, when he files a return, he subjects his affairs to the scrutiny of the Treasury, which cannot otherwise check his statements. That repeated scrutiny may become very irksome nearly everybody knows from experience; but no constitutional difficulties arise, none at least unless the abuse is far more crying than here."

What is there said is of peculiar interest to us, in view of the state of the proceedings disclosed by the record in the instant case. The questionnaires presented to respondent constitute merely the preliminary step on the part of the tax commission to obtain the information contemplated by the statute. The statute provides that the tax commission may "require" the taxpayer to furnish the information. It so far has made nothing but a request. We find nothing in the statute to compel respondent to answer the questionnaires. It doubtless "may refuse to file any return whatever and take (its) chances." It may be, upon response to a subpoena *duces tecum,* it could stand behind the shield of the fifth amendment of the Federal constitution and § 9, article I, of the state constitution, as to some of the information sought in the questionnaires. That we cannot determine, in the absence of specific instance. As was said in *In re International Corp. Co., supra:*

"The precise question before the court is whether the Commissioner, in an investigation of the income of this taxpayer, can require it to produce all the documents called for by the subpoena. The criterion set up by section 618 of the Revenue Act of 1928 (26 USCA § 1247) is whether the books the Commissioner wishes to inspect have any 'bearing upon the matters required to be included in the return. . . .' Obviously, the taxpayer cannot be the judge of what books and papers are relevant and material, and thus restrict the examination of his financial affairs to papers of his own selection. A determination of the matter, in the first instance at least, is for the Commissioner, who is charged with the duty of verifying the correctness of the taxpayer's returns."

For the same reason, the case of *In re Chase Nat. Bank, supra,* is of especial importance to us. While it is the decision of a court of first instance, it is predicated almost entirely upon the opinion of Judge Cardozo in the case of *In re Edge Ho Holding Corp.,* 256 N. Y. 374, 176 N. E. 537.

The charter of the city of New York provides for an officer called "commissioner of accounts" and authorizes him to

". . . make such special examinations of the accounts and methods of the departments and offices of the city . . . as the said commissioner may deem for the best interests of the city, and report to the mayor and the board of aldermen the results thereof."

(In passing, we may suggest the striking analogy between this provision and the purpose of chapter 127, Laws of 1935, p. 378, as set out in the First subdivision. For it is not only the obvious, but avowed, purpose of our act to coordinate taxing agencies, to the end that taxation may be uniform, not only as between counties, but as between taxpayers throughout the state. No one would have the hardihood to question the constitutionality of the end sought. Nor

do we think, in the face of the authorities, the constitutionality of the means can be doubted.) While engaged

". . . in an examination and investigation into the departments of the city connected with certain phases of the work of assessment, reduction, revision and collection of real property taxes,"

the commissioner of accounts issued a subpoena directing the assistant comptroller of Chase National Bank to appear for examination, and to produce

". . . all books, records and papers of every kind, character or description appertaining to. the receipt of rents of No. 15 Broad street from the time of its erection to the present day; and also copies of all leases for all tenants in that building for the same period."

In denying a motion to vacate the subpoena, the court said:

"If the professed object of the inquiry were 'merely a cover and a sham,' there might be room for judicial review. *In re Edge Ho Holding Corporation, supra,* 256 N. Y. 374, at page 381, 176 N. E. 537, 539. . . .

"The investigation need not be 'limited to a consideration of the methods actually in vogue. It may go beyond these into a consideration of what the methods ought to be. *Matter of Hertle,* 120 App. Div. 717, [105 N. Y. S. 765; Id.,] 190 N. Y. 531 [83 N. E. 1126]; *Matter of Hirshfield v. Craig, supra* [239 N. Y. 98], p. 112 [145 N. E. 816]. The inquiry . . . [may] probe into the past in the belief that discovery of its evils may bring correction in the future.' *In re Edge Ho Holding Corporation, supra,* 256 N. Y. 374, 380, 176 N. E. 537, 539. . . .

"As was so aptly said in the case last cited (256 N. Y. 374, 381, 176 N. E. 537, 539): 'Very often the bearing of information is not susceptible of intelligent estimate until it is placed in its setting, a tile in the mosaic. Investigation will be paralyzed if arguments as to materiality or relevance, however appropriate at the hearing, are to be transferred upon a doubtful

showing to the stage of a preliminary contest as to the obligation of the writ. . . . Only where the futility of the process to uncover anything legitimate is inevitable or obvious must there be a halt upon the threshold.' Nor do I believe there is any merit in the contention that the proposed examination constitutes an invasion of the petitioner's right of privacy. It is far-fetched to assert that the exercise of the powers under the subpoena involves unreasonable search and seizure. Objective facts involving income and expenditure have long been the objects of official scrutiny in connection with the administration of the federal and state income tax laws.''

Many cases have been cited by respondent. It is impracticable to try to discuss them. There are two, however, which should not go unnoticed. . People ex rel. Ferguson v. Reardon, 197 N. Y. 236, 90 N. E. 829, 134 Am. St. 871, 27 L. R. A. (N. S.) 141; Wallace v. Hughes Electric Co., 41 N. D. 418, 171 N. W. 840.

In the first, the court held that the demand of the assessing officer for an inspection of the taxpayer's records was in violation of the latter's rights under the fifth amendment to the Federal constitution and the analogous provision of the state constitution. There, however, the statute under which the assessing officer was acting authorized him to ''inquire into and ascertain whether the tax . . . has been paid,'' and if he should find that the tax has not been paid, it was his duty to bring an action to recover the tax *and penalty*—the penalty provided being for failure to pay the tax prescribed by the statute. In other words, the action for the tax and *penalty* would be predicated upon information obtained from the taxpayer's books and records. It is clear that to require him to submit his books and records for that purpose would be requiring him to furnish evidence against himself in a proceeding of a criminal nature. But no proceeding of a criminal aspect, arising from information ob-

tained, is contemplated by our act. The Tenth sub-division merely contemplates penalties as for contempt, for failure to obey summons or refusal to testify. They are in no sense penalties arising out of information that may be furnished by the taxpayer, or that may be gathered from an examination of his books and papers.

The North Dakota case is not distinguishable, but we cannot follow it for several reasons. It is clearly a minority holding. It is the decision of a divided court —three to two. A strong minority opinion, relying upon some of the cases we have cited, was written. The majority does not hold unconstitutional the act under which the tax commission sought an examination of the taxpayer's books and records. It does hold, however, that the attempt by the commission to exercise the powers delegated was arbitrary and oppressive, and therefore in violation of the guaranties of the fourth and fifth amendments and analogous provisions of the state constitution. Of course, this holding destroys any effective force of the act. It "halts upon the threshold" every effort at investigation that may be made and leaves to the statute nothing of substance.

Of course, the powers granted to the tax commission by chapter 127, Laws of 1935, p. 378, Rem. 1935 Sup., § 11091 [P. C. § 6874-5a], are not arbitrary, and the courts will not permit them to be exercised oppressively. But they are powers which the legislature may grant and the tax commission may exercise within constitutional limitations. In all of the decisions we have cited, the courts have assumed or held that the power granted was not, in fact, being arbitrarily or oppressively exercised; that the taxing officer was presumed to act within his constitutional powers; that the information sought by him legitimately tended to

establish the values of property; that it was for him to say, in the first instance, what information was necessary to that end. The attitude of the courts in these decisions is summed up by Judge Cardozo in language that bears repeating:

"The powers devolved by the charter upon the Commissioner of Accounts are of great importance for the efficient administration of the huge machinery of government in the city of New York. They will be rendered to a large extent abortive if his subpoenas are to be quashed in advance of any hearing at the instance of unwilling witnesses upon forecasts of the testimony and nicely balanced arguments as to its probable importance. Very often the bearing of information is not susceptible of intelligent estimate until it is placed in its setting, a tile in the mosaic. Investigation will be paralyzed if arguments as to materiality or relevance, however appropriate at the hearing, are to be transferred upon a doubtful showing to the stage of a preliminary contest as to the obligation of the writ. Prophecy in such circumstances will step into the place that description and analysis may occupy more safely. Only where the futility of the process to uncover anything legitimate is inevitable or obvious must there be a halt upon the threshold." *In re Edge Ho Holding Corp.*, 256 N. Y. 374, 176 N. E. 537.

We find nothing in the record before us to invoke judicial intervention to protect respondent in any right guaranteed it by either the Federal or state constitution.

The judgment is reversed, and the cause remanded with directions to dismiss.

TOLMAN, STEINERT, BEALS, and MAIN, JJ., concur.

HOLCOMB, J. (dissenting)—I am unable to concur in either the reasoning or the result of the prevailing opinion for many reasons, but can state only a few of them.

I agree that there is a striking unanimity of authority respecting inquisitorial powers by taxing officers and tribunals, but not such as are here in question. The overwhelming weight of authority is to the contrary. However, it would be a useless waste of time and space to examine and review the authorities on the question, since the majority has followed this opinion.

I do not agree with the statement in the majority opinion that

"Essentially, the only additional power delegated to the commission by chapter 127, Laws of 1935, p. 378, Rem. 1935 Sup., § 11091 [P. C. § 6874-5a], is that of authorizing it to inspect and require the production of the taxpayer's 'records, books, accounts, papers and memoranda.' "

That statement disregards the further provision of § 2:

". . . and for these purposes their records, books, accounts, papers and memoranda shall be subject to production and inspection, investigation and examination by said commission, *or any employee* thereof designated by said commission for such purpose, . . ."

In other words, the tax commission can send any mere clerk or office boy to inspect records, books, accounts, papers and memoranda of any taxpayer of any county, and such taxpayer is obliged to submit.

In my opinion, there has never been such an arbitrary delegation of legislative power to any administrative tribunal as has been granted by chapter 127, Laws of 1935, p. 378, Rem. 1935 Sup., § 11091 [P. C. § 6874-5a].

Tolerance or judicial approval of legislation conferring upon *administrative officers or boards* unlimited, arbitrary and dictatorial power against the pri-

vate rights of persons easily lead, as here, to the wholly unjustified legislative attempt to empower administrative officers or boards to in turn delegate that same power to others, not officers of any kind whatever.

I wish to call the attention of the majority concurring in this opinion that not one of the cases cited and so confidently quoted as sustaining the opinion, sustains it, even remotely.

This court and all other reputable courts have always followed the principles as to the taxing power enunciated in *McCulloch v. Maryland,* 17 U. S. 315 (4 Wheat. 316), where the end was legitimate. The early case of *In re Meador,* 16 Fed. Cas. No. 9,375, p. 1294, cited in the majority opinion, bears no resemblance to the case at bar. In that case, the supervisor was authorized to and did issue a summons to Meador & Brothers requiring them *to appear before him,* to testify under oath and to produce their books, papers, etc. That was the power granted under the old state tax commission acts of 1905 and 1907 which was always sustained.

That case has been followed by other Federal courts. It was also followed in the case of *Washington Nat. Bank v. Daily,* 166 Ind. 631, 77 N. E. 53, an early case from Indiana cited in the majority opinion. That also was a case where a proper taxing officer had required the bank to submit the books and papers specified for inspection by the officer.

In this state, the only taxing officer of property wholly within a county is the county assessor, inasmuch as this court has held in recent cases that the state tax commission cannot assess or re-assess intracounty property. *State ex rel. State Tax Commission v. Redd,* 166 Wash. 132, 6 P. (2d) 619; *Northwestern*

*Improvement Co. v. Henneford,* 184 Wash. 502, 51 P. (2d) 1083.

The case of *In re Edge Ho Holding Corp.,* 256 N. Y. 374, 176 N. E. 537, so extensively and confidently quoted and relied upon in the majority opinion, bears no resemblance to any feature of this case. That case involved a provision of the charter of New York City authorizing the commissioner of accounts to

". . . make such special examinations of the ac-accounts and methods of the *departments and offices* of the city . . . as the said commissioner may deem for the best interest of the city, and report to the mayor and the board of aldermen the results thereof." (Italics mine.)

Although adopted as a ruling case on this question, there is not the slightest analogy between that law and chapter 127, p. 378, *supra.* That ordinance was one providing for inspection of public offices, similar to our law providing for inspection and accounting of all public offices. It was not a law for inspection of accounts and affairs of private taxpayers.

The case of *In re Chase Nat. Bank,* 155 Misc. 595, 280 N. Y. S. 440, relied upon by the majority as "of special importance to us," is, as stated, by a New York court of first instance, predicated almost entirely upon the decision in *In re Edge Ho Holding Corp., supra.*

In the last cited case, a subpoena had been issued directing the assistant comptroller of the bank to appear for examination and to produce all books, records and papers of every kind, character or description, appertaining to the receipt of rents of certain property from the time of its erection to the present day and also all copies of leases for all tenants for the same period.

We have always sustained the power of a proper

taxing tribunal to compel the appearance of any taxpayer with necessary books and papers. It must, however, be a proper taxing officer or tribunal. This law goes much further than that.

Clearly, the majority opinion is at variance with the holding or principle announced in *State ex rel. State Tax Commission v. Redd, supra,* and *Northwestern Improvement Co. v. Henneford, supra.*

It was admitted by the assistant attorney general in the trial below:

"That said information, returns and reports are not sought for the purpose of placing property on a supplementary tax list which the assessor has failed to list or assess, nor to require any board of equalization to raise or lower the value of any taxable property under Remington's Revised Statutes, section 11091."

It was also admitted by the assistant attorney general:

"I admit that if plaintiff is required to prepare and submit to the State Tax Commission such return and report of said property, it will be put to substantial and irreparable loss and expense and be irreparably injured. I admit, in connection with that—I admit it will cost an appreciable amount to prepare the reports and returns that are required and if the law is declared unconstitutional and these reports are unauthorized, the loss to the plaintiff will be irreparable."

It thus conclusively appears that the action of the commission is unwarranted and arbitrary.

There is no action pending nor contemplated before the state tax commission to assess any property of respondent, and under our rules of decision it cannot be *first assessed* by the state tax commission.

The terms of this law authorize the invasion of the home of any citizen and disturbance in his private affairs, without authority of law, contrary to Art. I,

§ 7, Washington constitution and amendment IV, United States constitution.

For these and other reasons not necessary now to state, I dissent.

MILLARD, C. J., MITCHELL, and GERAGHTY, JJ., concur with HOLCOMB, J.