[No. 3471–II.   Division Two.   November 30, 1979.]

THE DEPARTMENT OF REVENUE, *Respondent,* v. HUGH H. MARCH, ET AL, *Appellants.*

*Hugh H. March,* pro se.

*Slade Gorton, Attorney General,* and *Karen Elledge, Assistant,* for respondent.

SOULE, J.—Hugh March appeals a judgment of the Superior Court entered pursuant to the provisions of RCW 82.32.110. By the judgment defendant was ordered to appear before a representative of the State Department of Revenue, hereinafter called Department, and to bring the books and records of his business for the audit period of

January 1, 1973, through December 31, 1976. We affirm the judgment.

Defendant has not assigned specific error to any findings of fact. Therefore, the findings are accepted as verities on this appeal. *Caffrey v. Chem–Ionics Corp.,* 69 Wn.2d 641, 419 P.2d 809 (1966); *Harris v. Harris,* 63 Wn.2d 896, 389 P.2d 655 (1964).

The trial court found that defendant conducts a registered business in Snohomish County. His firm was selected for audit by the Olympia Central Office of the Department pursuant to a request from the Everett office for a continuing work load. John D. Olson, the supervisor in Everett, telephoned defendant at his home to advise him of the projected audit and then on February 10, 1977, wrote to defendant advising him that in order to complete the audit defendant would have to produce for examination

all records pertaining to sales or services rendered by yourself. Records would include sales invoices, sales register and general ledger which would substantiate the sales reported.

On February 12, 1977, defendant wrote Olson stating that he would not "turn over private records" for audit. His letter further stated:

I told you in our conversation that I would be happy to justify any item you found to be suspect in any of the statements. I said that you would be required to state the reason you suspect these things, that following this you could come to my place of business and we would take out those papers necessary to justify that. I also told you that there would be witnesses present and the "meeting" would be recorded.

On March 9 Olson signed an administrative summons requiring defendant to appear on March 18, 1977, to testify regarding the records for the period under consideration. The summons also required the defendant to produce the books, records, papers or documents necessary to determine tax liability, if any, for the period in question. By letter of March 15, 1977, defendant advised the Department that he did not intend to comply with its "vague demands."

Thereafter, the Department filed this action seeking a court order requiring defendant to produce the records. After trial, the court prepared an exhaustive and carefully considered memorandum opinion upholding the request of the Department. The opinion clearly explained why the constitutional challenges were without merit. A judgment was then entered ordering defendant to appear with the books and records, and this appeal followed.

Three issues are presented for review. (1) Did the Department comply with RCW 82.32.070 and RCW 82.32-.110 in selecting defendant for audit? (2) Did the court err in ruling that the taxpayer refused to appear and produce the books and records of his business in response to the summons issued pursuant to RCW 82.32.110? (3) Did the action of the Department taken pursuant to RCW 82.32.110 violate the constitutional rights of the taxpayer–defendant, particularly with respect to the fourth, fifth, thirteenth and fourteenth amendments to the United States Constitution and article 1, sections 3, 7 and 9 of the Washington State Constitution?

### DID THE DEPARTMENT FOLLOW PROCEDURES REQUIRED BY WASHINGTON LAW?

RCW 82.32.070 provides in part:

Every person liable for any fee or tax imposed by chapters 82.04 through 82.28 RCW shall keep and preserve, for a period of five years, suitable records as may be necessary to determine the amount of any tax for which he may be liable, which records shall include copies of all federal income tax and state tax returns and reports made by him. All his books, records, and invoices shall be open for examination at any time by the department of revenue.

RCW 82.32.110 provides in part:

The department of revenue or its duly authorized agent may examine any books, papers, records, or other data, or stock of merchandise bearing upon the amount of any tax payable or upon the correctness of any return, or for the purpose of making a return where none has been made, or in order to ascertain whether a return

should be made; and may require the attendance of any person at a time and place fixed in a summons served by any sheriff in the same manner as a subpoena is served in a civil case, or served in like manner by an agent of the department of revenue.

The persons summoned may be required to testify and produce any books, papers, records, or data required by the department with respect to any tax, or the liability of any person therefor.

. . .

If any person summoned as a witness before the department, or its authorized agent, fails or refuses to obey the summons, or refuses to testify or answer any material questions, or to produce any book, record, paper, or data when required to do so, he shall be guilty of contempt, and the department shall thereupon institute proceedings in the superior court of Thurston county, or of the county in which such person resides, to punish him as for contempt of court.

The testimony of Olson, the audit supervisor, establishes that he was acting in the normal course of his employment when he made his contacts with the defendant. Defendant argues that the audit was not *routine* because the Department does not audit all taxpayers.

■ The Department is physically unable to audit every taxpayer for the reasons set forth in Olson's testimony. He testified that he had no part in selecting the accounts to be audited, and this testimony is unchallenged. Likewise, his explanation of how the accounts are computer–selected in Olympia is unchallenged. Defendant argues that because the audit is selective, it is not routine. The terms are not antithetical. Routine means "a standard practice: a regular course of procedure; . . . of, relating to, or in accordance with established procedure." Select means "to separate by picking out." *Webster's Third New International Dictionary* (1969). Defendant has cited no authority which condemns the general practice of choosing some accounts to be audited, and we can conceive of no reason why this should not be permitted as long as the choice is not made on some constitutionally impermissible standard such as race, gender

or creed. *Cf. State v. Lee,* 87 Wn.2d 932, 936, 558 P.2d 236 (1976), *appeal dismissed,* 432 U.S. 901, 53 L. Ed. 2d 1074, 97 S. Ct. 2943 (1977). Of course, the audit power must be used in good faith. *Cf. United States v. LaSalle Nat'l Bank,* 437 U.S. 298, 57 L. Ed. 2d 221, 98 S. Ct. 2357 (1978); *Gange Lumber Co. v. Henneford,* 185 Wash. 180, 192, 53 P.2d 743, 748, 103 A.L.R. 513 (1936).

Defendant argues that he has been selected for audit in the spirit of harassment because he is an outspoken critic of taxing policies. Although the record contains naked assertions, it discloses no evidence to support this contention. We uphold the conclusion of the trial judge that the Department complied with the statutory requirements and that the selection of defendant for audit was a routine, not an *invidious* selection.

### DID DEFENDANT REFUSE TO PRODUCE RECORDS?

Defendant argues that he did not completely refuse to produce records. Finding of fact No. 6 refers to defendant's letter of March 15, 1977, in which he replied to the demand for a production of *all books and records* stating: "I do not intend to attempt to comply with your vague demands."

RCW 82.32.070 provides that books and records shall be open for inspection at any time. RCW 82.32.110 grants the Department power to require the production of any books, papers, records or data required by the Department to determine the liability for the period in question. The statutes are broad enough to require production of *all* pertinent records. The word *all,* when used as an adjective, is not vague. Therefore, we construe the refusal contained in the letter of March 15, 1977, to be a categorical refusal. Absent constitutional considerations which we will hereafter address, the taxpayer has no right to require specific itemization of the material which he must produce. A request for all records is sufficiently specific where the audit period is defined. *See Gange Lumber Co. v. Henneford, supra.*

THE CONSTITUTIONAL CHALLENGES

Defendant's multiple assignments and arguments on constitutional grounds are supported by no citations of authority other than *Gange Lumber Co. v. Henneford, supra.* For this reason we could refuse to consider most of them. *E.g., Finney v. Farmers Ins. Co.,* 92 Wn.2d 748, 600 P.2d 1272 (1979); *State v. Kroll,* 87 Wn.2d 829, 558 P.2d 173 (1976). Nevertheless we address them to demonstrate to defendant that they have been considered.

█ Statutes are presumed to be constitutional. The burden is on the taxpayer to prove that the statute is unconstitutional. *Sator v. Department of Revenue,* 89 Wn.2d 338, 572 P.2d 1094 (1977).

█ Auditor Olson testified that he identified himself when he called defendant at home, and the clear inference from the record is that the call was to a publicly listed number. We know of no cases which hold that a telephone call directed to a party for a legitimate business purpose is an invasion of privacy in violation of any constitutionally protected area. *See Lewis v. Physicians and Dentists Credit Bureau, Inc.,* 27 Wn.2d 267, 272, 177 P.2d 896 (1947). In particular, there is no expectation of privacy in tax records which is afforded protection by the Fourth Amendment from legitimate inquiry by taxing authorities. *Couch v. United States,* 409 U.S. 322, 34 L. Ed. 2d 548, 558, 93 S. Ct. 611 (1973). We hold that the telephone call violated no right, constitutional or otherwise.

█ Defendant asserts that a summons to answer and produce all his papers violates his Fourth Amendment rights because it was issued without probable cause to suspect a tax liability. Defendant's position equates the right of the defendant to freedom from inquiry in a self–reporting tax context with his right to be free from search in a criminal context. Similar cases decided under the Internal Revenue Code of the United States have addressed the necessity for a showing of probable cause. In *United States v. Bisceglia,* 420 U.S. 141, 146, 43 L. Ed. 2d 88, 93, 95 S. Ct. 915 (1975), the court said:

Of necessity, the investigative authority so provided is not limited to situations in which there is probable cause, in the traditional sense, to believe that a violation of the tax laws exists. *United States v. Powell,* 379 U.S. 48 (1964). The purpose of the statutes is not to accuse, but to inquire. Although such investigations unquestionably involve some invasion of privacy, they are essential to our self–reporting system, and the alternatives could well involve far less agreeable invasions of house, business, and records.

In *United States v. Theep,* 502 F.2d 797 (9th Cir. 1974), the court held that a showing of probable cause is not required for the purpose of issuing a summons where the purpose is to determine whether or not a tax deficiency exists.

In upholding the right to summon and require production, the Supreme Court has noted that the taxpayer's protection from unreasonable requests is afforded by the fact that the summons can be enforced only by court order. Therein lies the source of relief for the taxpayer from harassment and other improper action. *United States v. LaSalle Nat'l Bank, supra; United States v. Bisceglia, supra; United States v. Powell,* 379 U.S. 48, 13 L. Ed. 2d 112, 85 S. Ct. 248 (1964). *Gange Lumber Co. v. Henneford, supra,* also notes that the court has power to protect the taxpayer from excessive or oppressive demands of the taxing authorities.

In the recent decision of *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 56 L. Ed. 2d 305, 98 S. Ct. 1816 (1978),[1] the United States Supreme Court did hold that a statute authorizing OSHA inspectors to make warrantless searches of factory premises was unconstitutional under the Fourth Amendment. However, in framing its decision the court was careful to note that even for the purpose of an OSHA inspection the government need not show probable cause in a criminal sense. It need show only that a specific business

---

[1]This case was apparently cited by defendant in the Superior Court but has not been cited in his brief to us.

has been chosen for inspection on the basis of a general administrative plan for enforcement derived from neutral sources. The court then carefully limited its opinion to the particular statute under consideration (29 U.S.C. § 657(a)) when it said

> Finally, the Secretary urges that requiring a warrant for OSHA inspectors will mean that, as a practical matter, warrantless–search provisions in other regulatory statutes are also constitutionally infirm. The reasonableness of a warrantless search, however, will depend upon the specific enforcement needs and privacy guarantees of each statute. . . . *Some statutes already envision resort to federal–court enforcement when entry is refused,* . . .

(Italics ours.) *Marshall v. Barlow's, Inc.,* 436 U.S. at 321, 56 L. Ed. 2d at 317, 98 S. Ct. at 1825.

The provisions of RCW 82.32.110 providing for resort to superior court in the event of refusal to obey the summons secures the constitutional protection noted by the emphasized language quoted in *Marshall v. Barlow's, Inc., supra.* In addition, it has been demonstrated by the analogous federal cases set forth above that a summons in aid of a tax audit is specifically outside the protection of the Fourth Amendment. In any event, in the case before us, there has been no entry on the premises and there has been no search. Instead, upon refusal to comply with the summons, resort has been had directly to the court.

We hold that the summons was properly issued in aid of a routine audit without necessity for a showing of probable cause to suspect a tax liability. The provisions of the fourth amendment to the United States Constitution and any parallel provision of the Washington State Constitution requiring probable cause are simply not applicable in a tax audit case as a condition precedent to the issuance of the summons.

Defendant contends that the requirement that he collect taxes from his customers and transmit them to the State, and keep records thereof, all without compensation, imposes involuntary servitude upon him in violation of the

thirteenth and fourteenth amendments to the United States Constitution and deprives him of property without just compensation in violation of the Fifth Amendment.

■ Defendant has cited no cases to support his contentions. In *Kasey v. Commissioner,* 457 F.2d 369 (9th Cir. 1972), *cert. denied,* 409 U.S. 869, 34 L. Ed. 2d 120, 93 S. Ct. 197 (1972), it was held that the record–keeping requirements and the requirement that the taxpayer shall prepare and file his own tax returns as required by the Internal Revenue Code does not amount to involuntary servitude under the Thirteenth Amendment or violate the Fifth Amendment. To like effect is *Abney v. Campbell,* 206 F.2d 836 (5th Cir. 1953), *cert. denied,* 346 U.S. 924, 98 L. Ed. 417, 74 S. Ct. 311 (1954). We deem the same reasoning applicable to tax returns required to be kept under state revenue law.

■ Lastly, at the trial level the defendant apparently claimed that under the Fifth Amendment he was not required to furnish any records or testify at all on the ground that the information might tend to incriminate him. Whether he still maintains that position is not clear from his brief, but in any event, the position is untenable. The subject of a summons must appear before the examining officer and raise the claim of privilege in response to particular questions. A blanket refusal is not sufficient. *United States v. Theep, supra; United States v. Malnik,* 489 F.2d 682 (5th Cir. 1974), *cert. denied,* 419 U.S. 826, 42 L. Ed. 2d 50, 95 S. Ct. 44 (1974).

The judgment of the trial court is affirmed.

PEARSON, C.J., and REED, J., concur.