156 P.3d 864 (2007)
STATE of Washington, Respondent,
v.
Michael M. MILES, Petitioner.
No. 78656-9.
Supreme Court of Washington, En Banc.
Argued November 9, 2006.
Decided April 26, 2007.
*865 Kevin P. McCabe, Attorney at Law, Seattle, WA, for Petitioner.
*866 Ivan Orton, Attorney at Law, Seattle, WA, for Respondent.
Jean Marie Wilkinson, Carol A. Murphy, Marta Uballe Deleon, Attorney Generals Office, Olympia, WA, for Amicus Curiae on behalf of Washington State Attorney General.
Douglas B. Klunder, Attorney at Law, Seattle, WA, for Amicus Curiae on behalf of American Civil Liberties Union.
C. JOHNSON, J.
¶ 1 This case involves the interpretation of article I, section 7 of the Washington Constitution in the context of statutory administrative subpoena authority under The Securities Act of Washington, chapter 21.20 RCW. Michael Miles is charged with securities fraud, witness intimidation and tampering, and theft. The trial court denied a motion to suppress evidence uncovered when a state agency issued an administrative subpoena seeking Miles' bank records without notice to Miles. The Court of Appeals granted a joint motion for discretionary review of that denial. We granted Miles' motion to transfer review to this court. Although the trial court concluded bank records are within a person's private affairs, the motion was denied on the basis of a pervasively regulated industry exception to the warrant requirement. We reverse and find the subpoena invalid under article I, section 7.

FACTS AND PROCEDURAL HISTORY
¶ 2 Miles purported to be an investment specialist.[1] Miles told Julie Gillett that he worked for a large investment firm, invested his clients' money wisely, and regularly doubled his clients' profits. Miles told Gillett that her principal would be guaranteed and he could double her money in 12 to 18 months. He gave Gillett a document on his letterhead in which he guaranteed return of her principal. Gillett gave Miles over $100,000 to invest.
¶ 3 Miles began delaying return of or information to Gillett about her money. Gillett contacted the Washington State Securities Division of the Department of Financial Institutions (Division) and filed a complaint, providing copies of the checks she made out to "MM Miles." The backs of the checks indicated they were signed by Miles and negotiated through Washington Mutual Bank. Gillett also provided a copy of Miles' guaranty of her principal, written on letterhead describing MM Miles as an investment firm.
¶ 4 On June 13, 2001, the Division issued an administrative subpoena to Washington Mutual Bank. The subpoena requested records pertaining to all accounts assigned to or used by Miles or entities under his control from January 1996 to the date of the subpoena. In an accompanying cover letter to the bank, the Division indicated it was only requesting copies of the signature cards, monthly statements, and all deposits of $1,000 or more. The Division attached copies of the checks provided by Gillett.
¶ 5 The Division did not disclose to Miles that it had issued the subpoena. Furthermore, in a letter accompanying the subpoena, the Division asked Washington Mutual not to tell Miles about the subpoena. The letter also urged Washington Mutual to act quickly because of the three year statute of limitations for prosecuting theft. Washington Mutual did not tell Miles of the investigation. It did comply with the subpoena. The records provided by the bank evidently supported the filing of criminal charges.
¶ 6 The superior court denied Miles' motion to suppress evidence from the bank records. The trial court found that banking records fall within constitutionally protected privacy interests under article I, section 7. The trial court also concluded that the subpoena lacked "authority of law" because, by not providing for notice, the statute leaves the individual's privacy interest unprotected. However, the trial court denied the suppression motion based upon a "pervasively regulated industry" exception to the warrant requirement. *867 We granted discretionary review under RAP 2.3(b)(4).[2]
¶ 7 The State urges us to affirm the trial court on a narrow basis: a reduced expectation of privacy based on participation in a pervasively regulated industry. Alternately, the State cross-assigns error to several findings and conclusions of the trial court, including that bank records are protected by article I, section 7 and that this statute lacks "authority of law."
¶ 8 Miles would have us affirm the trial court's ruling on the scope of private affairs and the lack of "authority of law" for an administrative subpoena in this case. Miles contends, however, that the trial court erred in two respects. First, Miles asserts that he could not have had a diminished expectation of privacy under the pervasively regulated industry exception to the warrant requirement. He maintains this statute neither reflects legislative authorization for the method nor serves as an adequate warrant substitute. Finally, he argues the Division unlawfully used an administrative inspection to further a criminal prosecution. Br. of Pet'r at 4-5.
¶ 9 In addition to the motion to suppress, the State filed a motion to supplement the record with the declaration of Martin Cordell. Cordell is the chief of enforcement for the Division. The motion was passed to the merits for our consideration. The State initially sought to introduce factual information, based on a conversation with Cordell, in the course of the State's arguments to the trial court regarding the motion to suppress. The trial judge stopped the State from giving oral representations of Cordell's opinion as to matters not on the record. The declaration was not filed with the trial court pending resolution of the motion. Miles urges us to deny the motion. Miles claims, in part, that the State's motion was not timely and that the evidence has low value. Since the declaration is unnecessary to our analysis, we deny the State's motion to supplement the record.

ANALYSIS
¶ 10 Chapter 21.20 RCW is the Securities Act of Washington and provides generally for regulation of the securities profession. RCW 21.20.380 provides the Division with subpoena authority, allowing the director or any officer to "subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, agreements, or other documents or records which the director deems relevant or material to the inquiry."[3] RCW 21.20.370(1) describes the reach of this authority: "[I]n his or her discretion [the director] (a) may annually, or more frequently, make such public or private investigations . . . as the director deems necessary . . ." to investigate past or ongoing violations of the chapter, rules and forms, or criminal law. The director may invoke his authority if "necessary or appropriate in the public interest or for the protection of investors." RCW 21.20.370(1).
¶ 11 Article I, section 7 of the Washington Constitution requires that "[n]o person shall be disturbed in his private affairs . . . without authority of law." The interpretation of article I, section 7 involves a two-part analysis. We begin by determining whether the action complained of constitutes a disturbance of one's private affairs. If there is no private affair being disturbed, no article I, section 7 violation exists. If a valid privacy interest has been disturbed, the second step in our analysis asks whether "authority of law" justifies the intrusion. In general terms, the authority of law required by article I, section 7 is satisfied by a valid *868 warrant. Since the State has argued that the trial court erred in concluding that bank records are protected as private affairs under article I, section 7, we begin with that question.[4]
¶ 12 The "private affairs" inquiry focuses on "`those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass absent a warrant.'" State v. Young, 123 Wash.2d 173, 181, 867 P.2d 593 (1994) (quoting State v. Myrick, 102 Wash.2d 506, 511, 688 P.2d 151 (1984)). Private affairs are not determined according to a person's subjective expectation of privacy because looking at subjective expectations will not identify privacy rights that citizens have held or privacy rights that they are entitled to hold. We begin by looking to what kind of protection has historically been afforded to the interest asserted. State v. McKinney, 148 Wash.2d 20, 27, 60 P.3d 46 (2002). Part of this inquiry focuses on the nature and extent of the information which may be obtained as a result of the governmental conduct. McKinney, 148 Wash.2d at 29, 60 P.3d 46.
¶ 13 As the trial court correctly recognized, our cases support the conclusion that a person's banking records are within the constitutional protection of private affairs. In Gunwall, we analyzed whether an individual's long distance phone records were within a person's private affairs. State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986). We concluded that they were based on, among other things, the type of information those records revealed. The information revealed where calls were made and to whom. We generally held that these records did not lose their privacy interests merely because the phone company, and perhaps some employees, had access to the records. That a contractual or business relationship existed with the phone company did not alter a person's expectation of privacy into an assumed risk of disclosure. Gunwall, 106 Wash.2d at 67, 720 P.2d 808 (quoting People v. Sporleder, 666 P.2d 135, 141 (Colo.1983)).
¶ 14 Similarly, in State v. Boland, 115 Wash.2d 571, 578, 800 P.2d 1112 (1990), although we were dealing with a privacy interest in garbage put out for collection, we incorporated in our opinion a recognition that the type of information potentially revealed by rummaging through garbage bags could include sensitive information about business records, bills, correspondence, tax records, and so on. This inquiry also guided our result in McKinney. There we concluded that driver's licensing records were not private because the information those records revealed did not disclose a person's associations, personal dealings, or movements. McKinney, 148 Wash.2d at 29-30, 60 P.3d 46.
¶ 15 As noted by amicus curiae American Civil Liberties Union (ACLU), Washington statutes have historically protected bank records from unsupervised access. Br. of Amicus ACLU at 18-19. As originally passed in 1959, RCW 21.20.380 denied the Fifth Amendment's self-incrimination shield to persons subject to administrative investigation under the securities act.[5] Addressing this right in the same section as the director's investigatory power implies that the legislature believed subpoenas would be issued *869 only to people subject to investigation. The provision of RCW 21.20.380 addressing self-incrimination was removed in 1975. Laws of 1975, 1 st Ex.Sess., ch. 84, § 22. But two years later, the legislature apparently affirmed their intent by designating personal bank records obtained by the State in the course of bank examinations as "confidential and privileged information." RCW 30.04.75(1).
¶ 16 RCW 30.04.75 further provides a requirement that notice to the customer must precede disclosure of bank records to the state evidencing legislative protection of bank records. Notice to "any customer of the bank, . . . who is named" is a precondition to disclosure by the director to "[o]fficials empowered to investigate criminal charges subject to legal process, valid search warrant, or subpoena." RCW 30.04.075(2)(c); see also RCW 32.04.220 (extending these protections to examination reports from saving banks); RCW 33.04.110 (same for savings and loan associations); RCW 31.12.565 (same for credit unions); RCW 31.45.030 (same for check cashers and sellers).[6] Statutory prohibitions against disclosing a person's banking records further support the private nature of these records.
¶ 17 The information sought here potentially reveals sensitive personal information. Private bank records may disclose what the citizen buys, how often, and from whom. They can disclose what political, recreational, and religious organizations a citizen supports. They potentially disclose where the citizen travels, their affiliations, reading materials, television viewing habits, financial condition, and more. Little doubt exists that banking records, because of the type of information contained, are within a person's private affairs.
¶ 18 We turn next to whether there was authority of law supporting the issuance of the subpoena to Miles' bank. The trial court held that the statute did not provide authority of law. We agree.
¶ 19 As a general principle, our cases have recognized that a search warrant or subpoena must be issued by a neutral magistrate to satisfy the authority of law requirement. State v. Ladson, 138 Wash.2d 343, 352 n. 3, 979 P.2d 833 (1999) (citing In re Pers. Restraint of Maxfield, 133 Wash.2d 332, 345-46, 945 P.2d 196 (1997) (Madsen, J., concurring)). Warrant application and issuance by a neutral magistrate limit governmental invasion into private affairs. In part, the warrant requirement ensures that some determination has been made which supports the scope of the invasion. See, e.g., State v. Jackson, 150 Wash.2d 251, 263-64, 76 P.3d 217 (2003) (without a warrant requirement there is no limitation on the State's intrusion "whether criminal activity is suspected or not."); RCW 10.79.015; CrR 2.3(c). The scope of the invasion is, in turn, limited to that authorized by the authority of law. Jackson, 150 Wash.2d at 261, 76 P.3d 217 (installation of GPS (global positioning system) device "clearly in excess of the scope of the warrant"). The warrant process, or the opportunity to subject a subpoena to judicial review, also reduces mistaken intrusions.
¶ 20 The protections afforded by the warrant or subpoena process are lacking here. The Securities Act of Washington, chapter 21.20 RCW, authorizes the Division to regulate the persons or companies licensed to engage in the securities business. Among the securities act's contents is a registration requirement for persons, including broker-dealers, salespersons, and investment advisers. RCW 21.20.040. Broker-dealers and investment advisers must maintain certain books and records and make them available for examination. RCW 21.20.100. The director has authority to deny, suspend, or revoke registrations on the basis of a variety of wrongs, including dishonest or unethical practices. RCW 21.20.110(1)(g). In addition to this licensing authority, the director, "in his or her discretion . . . may engage in the *870 detection and identification of criminal activities subject to this chapter. . . ." RCW 21.20.370(1)(b). The director may "[f]or the purpose of any investigation . . . require the production of any books, papers, correspondence, memoranda, agreements, or other documents or records which the director deems relevant or material to the inquiry." RCW 21.20.380(1). The director may refer evidence of violations of the chapter for criminal proceedings under the chapter. RCW 21.20.410. In contrast to the protections afforded by the warrant or subpoena process, the statute here has no safeguards and would allow the state to intrude into private affairs for little or no reason. This the state may not do.
¶ 21 As the trial court recognized, a subpoena is not authority of law simply because it is authorized by statute. Order on Def.'s Mot. to Suppress at 7 (citing State v. Butterworth, 48 Wash.App. 152, 158, 737 P.2d 1297,) review denied, 109 Wash.2d 1004 (1987). In Butterworth, a regulation of Pacific Northwest Bell's tariff schedule allowed representatives of law enforcement agencies to obtain unlisted telephone numbers and home addresses. Police used this authority to obtain a warrant and discovered evidence that Butterworth sought to suppress. The Court of Appeals correctly recognized the regulation's constitutional infirmity.
The Legislature may not confer upon the Utilities and Transportation Commission the judicial power to determine the constitutional rights of citizens. If citizens have a constitutionally protected privacy interest in their unpublished telephone listings, then the Commission cannot render warrantless disclosure of those listings lawful by the simple expedient of adopting a rule to that effect. If it could, then nothing would prevent the Commission from effectively overruling the Supreme Court's decision in Gunwall by simply adopting a rule allowing for warrantless disclosure of telephone toll records.
Butterworth, 48 Wash.App. at 158, 737 P.2d 1297. Any purported delegation of criminal investigatory authority to the Division must account for the protections of the warrant and subpoena requirements, especially where that power or authority is directed outside the business being regulated.
¶ 22 While some investigatory authority over records from licensed professionals is probably within the Division's regulatory authority, that authority is limited to the Division's licensing and disciplinary functions. However, especially in the context of a criminal investigation, a statute cannot authorize the state to invade a person's otherwise private matters. Merely because a person engages in a certain statutorily regulated profession does not expose that person's private matters to state inspection absent those protections afforded by a judicially issued warrant or subpoena. Here, for example, the Director could have requested Miles to submit to an audit of his business records, could have issued the subpoena to Miles to deliver his business records, or required Miles to submit to a deposition. But to the extent the Act is claimed to extend the Division's investigatory authority to private affairs, it is invalid. We affirm the trial court's conclusion that chapter 21.20 RCW does not provide authority of law for the intrusion in this case. An agency's regulatory authority extends to the person and matter being regulated and not to third parties who hold information protected as private affairs.
¶ 23 The State argues we should uphold this subpoena under the distinction set out in United States v. LaSalle Nat'l Bank, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), between administrative subpoenas issued for civil regulatory purposes and those for criminal purposes. Br. of Resp't at 31-44. Under LaSalle's "good faith" standard, an exercise of agency investigatory authority prior to recommending the case for prosecution must meet several criteria. The action must be pursuant to a legitimate purpose, the inquiry must be relevant to the purpose, the information not already in the agency's possession, and the administrative steps required by statute have been followed. LaSalle, 437 U.S. at 313-14, 98 S.Ct. 2357. We decline the invitation to adopt this approach. Regardless of the investigation's purpose or purposes, a disturbance of private affairs *871 must satisfy article I, section 7's authority of law requirement.[7]
¶ 24 The trial court upheld the subpoena because Miles voluntarily engaged in a pervasively regulated industry. Br. of Resp't at 18. Even if we were to recognize a pervasively regulated industry exception to the warrant requirement, such an exception would not encompass the facts of this case. The same principles discussed above in analyzing the issue of authority of law would similarly limit the government's ability to intrude into what would otherwise be protected. As stated above, just because a person engages in a business that is regulated (even pervasively) does not expose that person's non-business related private matters to public inspection. The State's authority to regulate cannot extend beyond the business related activities.
¶ 25 The Ninth Circuit Court of Appeals has correctly recognized the limitations of this exception. In a case dealing with the government's authority to conduct inspections of day care businesses, the court explained:
The state's warrantless inspection authority should not extend beyond the "closely regulated business" in which the provider engages. Warrantless inspections are permissible in those portions of the provider's home where day care activities take place only when the home is being operated as a family day care business. Such inspections, however, cannot be justified in purely private contexts.
Rush v. Obledo, 756 F.2d 713, 721 (9th Cir. 1985).
¶ 26 Under this reasoning, even assuming the Division can access some records without judicial oversight, that access would be narrowly limited to records related to the security industry. Here the subpoena request included the broadest request possible by demanding banking records from all accounts used by Miles, and was not limited to business records.
¶ 27 Amicus Washington State Attorney General argues that "the validity and reasonableness of a subpoena" are ensured when an agency must go to court to enforce it. Br. of Amicus Wash. Attorney Gen. at 11. But once the investigation exceeds what is reasonably related to legitimate business activities, this procedure is no cure. The bank does not share Miles' interest and would not challenge the subpoena on the basis of Miles' privacy rights even if the bank could assert those rights. As stated above, even if we were to recognize an exception under article I, section 7, it would not extend to the circumstances here. The pervasively regulated industry exception cannot justify dispensing with the warrant or subpoena protections provided to private affairs, to allow intrusion into matters outside the records or scope of the regulated industry.[8]
¶ 28 Finally, the State's arguments that warrantless inspection of the records is necessary to effectuate the regulatory scheme are unconvincing. The State argues that Miles' use of his personal bank account for business purposes made any overreaching necessary. We disagree. Inspection schemes must accommodate greater protections when an area has both business and private facets. See, e.g., Obledo, 756 F.2d at 721. The State and Amicus Washington State Attorney General, argue that effective investigation may be compromised if potential violators are alerted to the investigation. Br. of Resp't at 12-13; Br. of Amicus Wash. Attorney Gen. at 8-9. Obtaining a judicially issued warrant or subpoena risks neither detection nor delay.[9] The State claims that the *872 search's breadth was necessary because it revealed checks received from other victims. This is not a basis for an exception to the warrant or subpoena requirement. The State argues the search was needed to uncover proof that Miles used investor funds for personal purposes; receipt alone is not enough. Again, this supports a resort to judicial issuance of a subpoena or warrant, not an exception.
¶ 29 The State already validly possessed the canceled checks from Gillett along with her statement, which supports the filing of some charges. No emergent need existed to avoid seeking court authorization for the disclosure demand.

CONCLUSION
¶ 30 We find that banking records are private affairs protected by article I, section 7 of the Washington Constitution. A search of personal banking records without a judicially issued warrant or subpoena to the subject party violates article I, section 7. Chapter 21.20 RCW is invalid to the extent it authorizes the Division to issue administrative subpoenas to third parties for otherwise private information.
WE CONCUR: GERRY L. ALEXANDER, C.J., TOM CHAMBERS, SUSAN OWENS, MARY E. FAIRHURST, RICHARD B. SANDERS, JAMES M. JOHNSON, JJ.
BRIDGE, J. (concurring).
¶ 31 Although I agree with the majority's conclusion that RCW 21.20.380 does not provide authority of law under the facts of this case, I disagree with the majority's reasoning. The majority finds that "[t]he protections afforded by the warrant or subpoena process are lacking here," majority at 869, but it never discusses what the subpoena process entails. The majority then concludes that chapter 21.20 RCW is invalid insofar as it permits the Washington State Securities Division of the Department of Financial Institutions (Division) to subpoena third parties for "otherwise private information." Majority at 872. I fear that such a broad pronouncement calls into question the validity of other statutes authorizing administrative subpoenas, and thus I would render a narrower holding based upon the facts before us.
¶ 32 As discussed by the majority, our state constitution prohibits the invasion of private affairs without authority of law. See Wash. Const. art. I, § 7. I agree with the majority that for purposes of our constitution, bank records constitute "private affairs." However, I believe that in its analysis of the second part of the constitutional provision ("authority of law"), the majority does not clearly explicate the subpoena process, thus creating uncertainty as to the scope of our holding in this case.
¶ 33 Under article I, section 7, a warrantless search is per se invalid. See State v. Ladson, 138 Wash.2d 343, 349, 979 P.2d 833 (1999) (quoting State v. Hendrickson, 129 Wash.2d 61, 70, 917 P.2d 563 (1996)). However, we have recognized certain exceptions to the warrant requirement: "consent, exigent circumstances, searches incident to a valid arrest, inventory searches, plain view, and Terry[[1]] investigative stops." Id. We have also recognized that a warrant is not necessary for administrative subpoenas. See Steele v. State, 85 Wash.2d 585, 592, 537 P.2d 782 (1975).
¶ 34 In Steele, the attorney general served a civil investigative demand on an employment agency, pursuant to a provision of the Consumer Protection Act, chapter 19.86 RCW. Id. at 586, 537 P.2d 782. The respondents challenged this demand, arguing that it constituted an unreasonable search and seizure. Id. at 592, 537 P.2d 782. We applied the test set forth by the United States Supreme Court in Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 209, 66 S.Ct. 494, 90 L.Ed. 614 (1946), and United States *873 v. Morton Salt Co., 338 U.S. 632, 652, 70 S.Ct. 357, 94 L.Ed. 401 (1950), for determining the reasonableness of an administrative subpoena: (1) the inquiry must be within the authority of the agency, (2) the demand must not be too indefinite, and (3) the information sought must be reasonably relevant. Steele, 85 Wash.2d at 594, 537 P.2d 782. Applying this test, we found that the subpoena was lawful under the fourth amendment to the United States Constitution. Id. at 595, 537 P.2d 782. We were careful to note, however, that in those situations in which it appeared that the attorney general had acted arbitrarily, "the supplicant is authorized by RCW 19.86.110(7) to petition the appropriate superior court and, upon a showing of good cause, the investigative demand may be set aside." Id.
¶ 35 The Court of Appeals reiterated the importance of these protections in Department of Revenue v. March, 25 Wash.App. 314, 610 P.2d 916 (1979). In that case the Department of Revenue sought to audit a business owner and for purposes of the audit requested his business records. Id. at 316, 610 P.2d 916. When the respondent failed to comply, the department obtained a court order. Id. at 317, 610 P.2d 916. The Court of Appeals affirmed, finding that
[i]n upholding the right to summon and require production, the [United States] Supreme Court has noted that the taxpayer's protection from unreasonable requests is afforded by the fact that the summons can be enforced only by court order. Therein lies the source of relief for the taxpayer from harassment and other improper action.
Id. at 321, 610 P.2d 916. The Court of Appeals found that "[t]he provisions of RCW 82.32.110 providing for resort to superior court in the event of refusal to obey the summons secures the constitutional protection. . . ." Id. at 322, 610 P.2d 916.
¶ 36 The majority here finds that RCW 21.20.380 cannot provide authority of law because it "has no safeguards and would allow the state to intrude into private affairs for little or no reason." Majority at 870. However, the statute contains a provision calling for judicial enforcement in the case of a refusal to obey, as did the statutes at issue in Steele and March. See RCW 21.20.380(4) (formerly RCW 21.20.380(3)). Additionally, Washington's Administrative Procedure Act (WAPA) provides generally for judicial enforcement of administrative subpoenas. RCW 34.05.588. The superior court shall order compliance with an administrative subpoena if "it appears to the court that the subpoena was properly issued, that the investigation is being conducted for a lawfully authorized purpose, and that the testimony or documents required to be produced are adequately specified and relevant to the investigation." RCW 34.05.588(2). WAPA addresses the major elements of a constitutional search and seizure: (1) a neutral magistrate, (2) limited and specific scope of the request, and (3) relevance to the investigation. Therefore, I would find that safeguards exist, but that here Miles was not afforded the opportunity to invoke them.
¶ 37 The majority is concerned with the fact that the Division's request here was broad, encompassing both personal and business banking records. See majority at 870. However, the safeguards outlined above would allow Miles to argue before a neutral magistrate that the scope of the Division's request exceeded that necessary for the investigation. I believe that this type of case-by-case review is proper, rather than issuing broad statements about what types of information may be requested from whom. Such statements have a potentially deleterious effect on statutes not before us, and thus I hesitate to join the majority. Instead, I concur.
WE CONCUR: SUSAN OWENS and BARBARA A. MADSEN, JJ.
NOTES
[1] This statement of the facts is drawn from the trial court's factual summary. Miles disputes the truth of the allegation, but agrees that these facts were before the securities division at the time of its investigation. Br. of Pet'r, at 2.
[2] RAP 2.3(b)(4) provides:

(b) Considerations Governing Acceptance of Review. Except as provided in section (d), discretionary review may be accepted only in the following circumstances:
(4) The superior court has certified, or that all parties to the litigation have stipulated, that the order involves a controlling question of law as to which there is substantial ground for a difference of opinion and that immediate review of the order may materially advance the ultimate termination of the litigation.
[3] The version of the statute in effect at the time of this subpoena did not include authority to require the bank to keep the subpoena secret. Whether nondisclosure is permissive or mandatory does not alter the outcome of our analysis.
[4] The United States Supreme Court validated the subpoena of third party bank records without a warrant or notice, finding these records were not protected by any Fourth Amendment privacy at all. United States v. Miller, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), superseded by statute, Right to Financial Privacy Act of 1978, 92 Stat. 3697, 12 U.S.C. §§ 3401-3422, as recognized in Sec. & Exch. Comm'n v. Jerry T. O'Brien, Inc., 467 U.S. 735, 745, 104 S.Ct. 2720, 81 L.Ed.2d 615 (1984).
[5] That subsection provided:

(2) No person is excused from attending and testifying or from producing any document or record before the director or in obedience to the subpoena of the director or any officer designated by him, or in any proceeding instituted by the director, on the ground that the testimony or evidence (documentary or otherwise) required of him may tend to incriminate him or subject him to a penalty or forfeiture; but no individual may be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is compelled, after claiming his privilege against self-incrimination, to testify or produce evidence (documentary or otherwise), except that the individual so testifying shall not be exempt from prosecution and punishment for perjury committed in so testifying.
Laws of 1959, ch. 282, § 38.
[6] In addition to notice, the legislature apparently sought to condition disclosure to prosecutors on obtaining either a search warrant or subpoena. See Final Legislative Report, 45th Leg., at 40 (Wash.1977). Similarly, where the reports are sought to be admitted in a civil action, in camera review ensured that only relevant and "otherwise unobtainable" portions could be exposed to the public. RCW 30.04.075(6). Cf. McKinney, 148 Wash.2d 20, 60 P.3d 46 (narrowing public access to Department of Licensing records while excepting law enforcement uses).
[7] Amicus curiae Washington State Attorney General similarly argues that the Division has authority to disclose evidence of criminal activity to a prosecutor. Br. of Amicus Wash. Attorney Gen. at 17-18 (Evidence discovered "through the lawful use of a subpoena does not make the subpoena or the agency's investigation unlawful."). That may be true, but it does not supply authority of law where that authority is lacking.
[8] The State also argues that the Division did not have authority to seek a subpoena under the terms of CrR 2.3(a). State's Resp. to Amicus ACLU at 16. But the Division has a process for obtaining subpoenas with judicial review. Ex. A, State's Motion to Supplement. Also, the Division could have sought a search warrant through an assistant attorney general.
[9] Judicial oversight is prominent even in states that permit nondisclosure of a subpoena by a customer's bank. See, e.g., Cal. Gov.Code § 7476(b)(1)(C) (prosecutor may obtain 30-day delay if court finds disclosure would "impede the investigation"); Conn. Gen.Stat. Ann. § 36a-43(a) (court may allow non-disclosure on a showing of "good cause"); Or.Rev.Stat. § 192.565 (absent customer consent court order required before financial institution can disclose records).
[1] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).