IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>     Respondent,<br><br>  v.<br><br>A.G.,<br><br>     Appellant. | No. 88676-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — Fourteen-year-old A.G. pled guilty to assault in the third degree. The court entered a one-year deferred disposition and imposed community supervision conditions including the statutory requirement that A.G. refrain from committing new offenses and comply with mandatory school attendance. At issue in this appeal is the court's requirement of random urinalysis (UA) to monitor A.G.'s use of controlled substances and alcohol. Finding no error, we affirm.

FACTS

When A.G. was 13 years old, he and his brother were accused of stealing blow torches from Home Depot. The resulting police chase and arrest resulted in A.G. being charged with assault in the third degree, obstruction, and theft in the third degree. This was the first time A.G. was in the court system. The parties entered an agreed disposition where A.G. pled guilty to assault in the third degree in exchange for dismissal of the other counts.

A.G., the State, and the probation officer agreed that a deferral was appropriate. The probation officer submitted a disposition probation report that included school discipline records. The probation officer summarized that A.G. struggles with school attendance, including being suspended for cannabis use. The probation officer and the State recommended that the court require A.G. submit to random UA testing while on community supervision. A.G. objected, arguing that such a condition had to be crime-related and A.G.'s adjudication had no relationship to alcohol or drugs.

The court imposed a one-year deferred disposition. As part of this order, the court imposed general community supervision conditions, including, as relevant to this appeal, that

> (A) The respondent is ordered to refrain from committing new offenses. This provision includes no possession/use of alcohol and non-prescribed controlled substances; no possession/use of drug paraphernalia; and no possession/use of firearms, ammunition, or dangerous weapons as dictated by RCW 9.41. "Dangerous weapons" includes clubs, knives, metal knuckles, guns, tasers, or other weapons capable of producing bodily injury.
> (B) The respondent is ordered to comply with the **mandatory school attendance** provisions of RCW 28A.225 and have no unexcused absences or suspensions. If the respondent has an unexcused absence or suspension, the respondent shall immediately notify the probation counselor.

The court also imposed specific community supervision conditions, including: "The Respondent shall be monitored for the use of controlled substances and/or alcohol through **random urinalysis** or other testing as directed by the probation counselor, and the Respondent shall fully cooperate." A.G. appeals.

2

DISCUSSION

Crime-Relatedness

A.G. argues that the trial court exceeded its statutory authority when it ordered A.G. to submit to random UA as a community supervision condition because the condition was not crime-related and the condition does not further his rehabilitation. The State argues that the condition is appropriate because it allows the court to monitor A.G.'s compliance with a required condition under RCW 13.40.020(5). We agree with the State.

The Juvenile Justice Act (JJA) intends "that youth … be held accountable for their offenses and that communities, families, and the juvenile courts carry out their functions consistent with this intent." RCW 13.40.010(2). To accomplish this intent, the statute lists "equally important purposes," including to "[p]rotect the citizenry from criminal behavior" and "[p]rovide for the rehabilitation and reintegration of juvenile offenders," among others. RCW 13.40.010(2)(a), (f) (emphasis added). "[T]he JJA permits juvenile courts to impose any conditions of supervision it deems necessary to meet the needs of the juvenile and to effectuate the rehabilitative and accountability goals of the JJA." State v. S.D.H., 17 Wn. App. 2d 123, 131-32, 484 P.3d 538 (2021) (citing State v. H.E.J., 102 Wn. App. 84, 87, 9 P.3d 835 (2000)). Juvenile courts have wide latitude when imposing those conditions. State v. K.H.-H., 185 Wn.2d 745, 755, 374 P.3d 1141 (2016). Accordingly, "[w]e review conditions for abuse of discretion and will reverse if a condition is manifestly unreasonable." State v. J.H.-M., 28 Wn. App. 2d 757, 761, 538 P.3d 644 (2023).

A.G. quotes the following holding from K.H.-H. to support his argument that conditions imposed must be crime-related, arguing that the court's authority is confined to "'reasonable conditions that are related to the crime of which the offender was convicted and that further the reformation and rehabilitation of the juvenile.'" (quoting K.H.-H., 185 Wn.2d at 755). A.G. quotes this passage out of context and fails to recognize that K.H.-H.'s holding relates to a condition that has nothing to do with monitoring statutorily mandated conditions. K.H.-H., 185 Wn.2d at 755. The full quote reads, "'a juvenile court can impose and require reasonable conditions that are related to the crime of which the offender was convicted and that further the reformation and rehabilitation of the juvenile.'" Id. (emphasis added).

In K.H-H., the juvenile court sentenced the defendant to three months of community supervision and ordered him to write an apology letter to the victim. Id. at 748. The defendant alleged that this condition violated his First Amendment rights and article I, section 5 of the Washington Constitution. Id. The court disagreed, explaining that:

> Juvenile courts are permitted wide latitude and discretion in imposing conditions in a disposition order. This makes sense given that juveniles are, by their very nature, still developing. The JJA recognizes the differences between adults and juveniles and embraces rehabilitation as a primary goal rather than a focus primarily on punishment. Because of this, we hold that a juvenile court can impose and require reasonable conditions that are related to the crime of which the offender was convicted and that further the reformation and rehabilitation of the juvenile.

Id. at 755-56. The court held that under the "wide latitude and discretion" given to juvenile courts, it was proper for the juvenile court to order K.H.–H. to write a letter of apology to the victim. Id. at 755. Notably, in the adult context, community supervision conditions must be crime related. RCW 9.94A.505(9); State v. Nguyen, 191 Wn.2d 671,

4

683, 425 P.3d 847 (2018). However, the Washington Supreme Court recently answered "the question of whether a condition that authorizes [(breath analysis)] BA and UA testing to monitor compliance with statutorily authorized conditions prohibiting alcohol and drug use is constitutionally permitted, even if it is not crime related." State v. Nelson, 4 Wn.3d 482, 485, 565 P.3d 906 (2025). The court answered the question in the affirmative, holding that if prohibitions of alcohol and drug use are statutorily authorized, they do not have to be crime-related to be imposed; thus, it follows that monitoring compliance with statutorily-authorized prohibitions via random BA and UA testing need not be crime-related.[1] Id. at 503-04.

Turning back to the JJA, the juvenile court, in imposing community supervision, "shall order the juvenile to refrain from committing new offenses" and "shall order the juvenile to comply with the mandatory school attendance provisions of chapter 28A.225 RCW." RCW 13.40.020(5). Under the JJA, "[c]ommunity supervision is an individualized program that can include monitoring and reporting requirements." State v. S.J., No. 59322-0-ll, slip op. at 21 (Wash. Ct. App. July 29, 2025) (unpublished) (citing RCW 13.40.020(5)(c)), https://www.courts.wa.gov/opinions/pdf/D2%2059322-0-II%20Unpublished%20Opinion.pdf, review denied, 584 P.3d 402 (2026).[2] The State understandably relies on S.J. as persuasive authority, as it directly addresses the same issue raised in this appeal.

---

[1] The Nelson court noted that its holding does not preclude an inquiry on another day in another case where the method of enforcement is challenged as unreasonable. Nelson, 4 Wn.3d at 509. Similarly, in the instant case, A.G. raises concerns about how random UAs may negatively impact A.G.'s schooling by forcing him to miss class. Such concerns relate to future enforcement that is not ripe for review in the instant case.

[2] We may cite or discuss unpublished opinions in our opinions if "necessary for a reasoned decision." GR 14.1(c).

In <u>S.J.</u>, the juvenile argued

> that the juvenile court abused its discretion when it imposed the condition
> that S.J. refrain from using drugs and alcohol because her underlying
> offenses had nothing to do with drug or alcohol use, nor does the record
> show that she struggles with substance abuse. Additionally, S.J. argues
> that the condition of random urinalyses (UAs) violates her right to privacy.

No. 59322-0-II, slip op. at 23. Similar to the record in the instant case, nothing in the record in <u>S.J.</u> suggested that alcohol or drugs were related to S.J.'s offenses. <u>S.J.</u>, No. 59322-0-II, slip op. at 23. Additionally, like A.G., S.J. was still a minor when the juvenile court imposed her community supervision conditions, meaning she could not legally drink alcohol. <u>S.J.</u>, No. 59322-0-II, slip op. at 24 (citing RCW 66.44.270(3)(a)). Just as the <u>S.J.</u> court recognized that S.J. using drugs or alcohol, based on her age, would constitute a new offense in violation of the mandatory condition of refraining from committing new offenses, so is the case for A.G. <u>S.J.</u>, No. 59322-0-II, slip op. at 24. The <u>S.J.</u> court held that the juvenile court did not err when it imposed random UA to monitor the prohibition on S.J.'s drug and alcohol use. <u>S.J.</u>, No. 59322-0-II, slip op. at 24. Moreover, in the instant case, the record supports that A.G.'s cannabis use impacted his struggles with school attendance. Even A.G.'s counsel argued that "the focus on Probation should be to make sure that A.G. is caught up with school."

The condition that A.G. refrain from using drugs or alcohol is consistent with the accountability and rehabilitative purposes of the JJA. <u>See</u> RCW 13.40.010, .020(5). The juvenile court did not err in ordering random UA to monitor A.G.'s compliance with statutorily authorized conditions.

## Article I, Section 7

A.G. also claims that the random UA testing is an unconstitutional intrusion on his privacy under article I, section 7 of our state constitution. A.G. objected to this condition below but did not argue it was a violation of his privacy. He argues that he can raise this argument for the first time on appeal because the condition "implicates" a constitutional interest. Under RAP 2.5(a), we may refuse to review a claim or error not raised in the trial court. An exception to this rule is when the claimed error is a "manifest error affecting a constitutional right." RAP 2.5(a)(3). The State does not argue that A.G. waived this issue.

Before reviewing the merits of an unpreserved error under RAP 2.5(a)(3), we must ask two questions: (1) has the party claiming the error shown the error is truly of constitutional magnitude and, if so, (2) has the party demonstrated that the error is manifest? State v. Kalebaugh, 183 Wn.2d 578, 583, 355 P.3d 253 (2013).

We do not assume a party's assigned error is of constitutional magnitude. State v. O'Hara, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). Instead, "[w]e look to the asserted claim and assess whether, if correct, it implicates a constitutional interest as compared to another form of trial error." Id. To determine whether the RAP 2.5(a)(3) exception is applicable, "[i]t is proper to 'preview' the merits of the constitutional argument to determine whether it is likely to succeed." State v. Kirwin, 165 Wn.2d 818, 823, 203 P.3d 1044 (2009) (quoting State v. Walsh, 143 Wn.2d 1, 8, 17 P.3d 591 (2001)). Here, we are asked to consider whether it is an unlawful disturbance of private affairs to subject a juvenile to random UA. Because this question reaches a constitutional

interest, we consider the merits of A.G.'s argument to determine if there is error and if it is manifest.

Article I, section 7 of the Washington Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." A search occurs under article I, section 7 if "the government disturbs 'those privacy interests which citizens have held, and should be entitled to hold, safe from governmental trespass absent a warrant.'" State v. Hinton, 179 Wn.2d 862, 868, 319 P.3d 9 (2014) (emphasis omitted) (quoting State v. Myrick, 102 Wn.2d 506, 511, 688, P.2d 151 (1984)). "Article I, section 7 'is grounded in a broad right to privacy.'" Id. (quoting State v. Chacon Arreola, 176 Wn.2d 284, 291, 290 P.3d 983 (2012)).

An analysis under article I, section 7 requires a two-party inquiry. State v. Bowman, 198 Wn.2d 609, 618, 498 P.3d 478 (2021) (citing State v. Miles, 160 Wn.2d 236, 243, 156 P.3d 864 (2007)). First, courts must determine if the challenged action disturbs an individual's private affairs. State v. McKinney, 148 Wn.2d 20, 27, 60 P.3d 46 (2002)). The State concedes that random UA disturbs an individual's private affairs, satisfying the first prong under article I, section 7, even while recognizing that probationers have a reduced expectation of privacy. Nelson, 4 Wn.3d at 501-02.

If an individual's private affairs have been disturbed, the second prong under article I, section 7 requires the court to determine whether the disturbance is justified by the "authority of law." Miles, 160 Wn.2d at 244. In State v. Olsen, 189 Wn.2d 118, 127-28, 399 P.3d 1141 (2017), our state Supreme Court explained that, in the context of a person on probation, to determine whether a disturbance has "authority of law" the court should engage in a balancing test. This balancing test includes "examin[ing] whether a

compelling interest, achieved through narrowly tailored means, supports the intrusion into a … probationer's reduced privacy interests." Id. at 128. Probationers have a duty to engage in their rehabilitation in exchange for the privilege of being relieved from jail time and "should expect close scrutiny." Id. at 127. The fact that the defendant in Olsen was an adult and A.G. is a juvenile is a distinction without a material difference in determining that this balancing test should equally apply to the instant case.

Here, A.G. was granted a deferred disposition, which means that he was found guilty on stipulated facts and the disposition is deferred pending satisfaction of conditions of supervision that the court specifies. State v. D.P.G., 169 Wn. App. 396, 399, 280 P.3d 1139 (2012). "If the juvenile completes all supervision conditions, the conviction will be vacated and the case dismissed with prejudice." Id. Therefore, A.G. has a duty to engage in his rehabilitation, through complying with his supervision conditions, for the privilege of his conviction being vacated and his case dismissed with prejudice. For A.G.'s random UA supervision condition to have authority of law, there must be a compelling interest achieved through narrowly tailored means.

As to whether A.G.'s condition has authority of law, the State relies on Nelson. In Nelson, the defendant pled guilty to three counts of rape of a child in the third degree, communication with a minor for immoral purposes, and child molestation in the second degree. 4 Wn.3d at 487. The court imposed a special sex offender sentencing alternative and placed the defendant on community custody. Id. at 487-88. One of the defendant's community custody conditions prohibited him from using controlled substances without a prescription, consuming alcohol, and using cannabis without

medical authorization. Id. at 488. To monitor his compliance, the court required the defendant to submit to breathalyzer and UA testing. Id.

The defendant argued that this condition violated his right to privacy under article I, section 7. Id. at 492. As in the instant case, the parties agreed that the first prong under article I, section 7 is met. Id. at 501-502. However, A.G. argues that Nelson cannot apply here under the second prong of his article I, section 7 challenge because Nelson applies to an adult and he is a juvenile. We disagree.

First, A.G. states that Nelson cannot apply because the JJA prioritizes rehabilitation over punishment. As discussed above, the JJA provides for the rehabilitation and reintegration of juvenile offenders, and juvenile courts have wide latitude when imposing conditions of supervision it deems necessary to meet the needs of the juvenile and to effectuate the JJA's rehabilitative and accountability goals. S.D.H., 17 Wn. App. 2d at 131-32 (citing H.E.J., 102 Wn. App. at 87). Juvenile courts are not only authorized to impose conditions of community supervision, but they also are required to impose certain community supervision conditions, such as requiring the juvenile to refrain from committing new crimes and requiring juveniles to comply with mandatory school attendance. RCW 13.40.020(5). A.G. cites no authority to support that monitoring compliance through random UA equates to punishment.

In Nelson, the court held that the State has a compelling interest in "promot[ing] and assess[ing] the rehabilitation of a probationer," "effective prison and probation management" and "protect[ing] the public." 4 Wn.3d at 504 (alterations in original) (citing Matter of Juveniles A, B, C, D, E, 121 Wn.2d 80, 92, 94, 847 P.2d 455 (1993); Olsen, 189 Wn.2d at 129). Similarly, here, the JJA specifically states that rehabilitation and

protecting the public are equally important purposes of the Act. RCW 13.40.010(2)(a), (f). The juvenile court has a compelling interest in disturbing A.G.'s privacy interest in protecting the public and promoting his rehabilitation through effective community supervision management.

Next, A.G. argues that his random UA community supervision condition is not narrowly tailored because he is expected to attend school every day but will be forced to leave school and present a urine sample when requested. Nothing in the record supports this assertion. Instead, A.G. provides in his brief a link to a website listing times that the UA testing center in Snohomish County is open. Even if we were to consider this information, the working hours of 5 a.m. to 3:59 p.m. do not establish that the random UA would necessarily interfere with A.G.'s school attendance. A.G. conflates concerns related to reasonableness of future enforcement as opposed to whether the condition is narrowly tailored.

In Olsen, our state Supreme Court held that a random UA condition was narrowly tailored because it was a crucial monitoring tool that was limited in scope and imposed only to assess compliance with a valid prohibition on drug and alcohol use. 189 Wn.2d at 130. The defendant in Olsen pled guilty to one count of driving under the influence (DUI) and, as a condition of her suspended sentence, she could not consume alcohol, marijuana, or nonprescribed drugs. Id. at 121. The court also required the defendant submit to random UA to ensure compliance with conditions regarding alcohol and controlled substances. Id.

The court reasoned that the defendant's random UA condition was narrowly tailored because UA is "an important monitoring tool utilized by courts during the

11

rehabilitative process of probation." Id. at 130. Additionally, the defendant's judgment and sentence explicitly authorized random UA only to "ensure compliance with conditions regarding the consumption of alcohol and controlled substances." Id. at 132-33. Therefore, the court held that the defendant's random UA requirement was narrowly tailored. Id. at 134. [3] Recently, the Washington Supreme Court reaffirmed its support of its holding in Olsen and held that when BA and UA testing is narrowly tailored to achieve the State's compelling interest in monitoring compliance to validly imposed community custody conditions, such testing is "not as a fishing expedition." Nelson, 4 Wn.3d at 509.

Although Olsen involved an adult, not a juvenile in juvenile court, its reasoning as to the constitutional question still applies. Notably, Olsen's holding that the defendant's random UA was narrowly tailored focused on the rehabilitative process of probation; the JJA also has a rehabilitative focus. RCW 13.40.010(2)(f).[4] Also, like the condition in Olsen, A.G.'s community supervision condition explicitly authorized random UA only to "monitor[] for the use of controlled substances and/or alcohol." We hold that A.G.'s community supervision requirement to submit to random UA is narrowly tailored and does not violate his article I, section 7 right to privacy. Accordingly, A.G. fails to establish that the court requiring him to submit to random UA as part of his community supervision constitutes a manifest constitutional error.

---

[3] The court was careful to note that random UA can "lack 'authority of law' absent a sufficient connection to a validly imposed probation condition or if the testing is conducted in an unreasonable manner." Olsen, 189 Wn.2d at 134.

[4] Later, in Nelson, our state Supreme Court further clarified that "Olsen never expressly stated that random UA testing for alcohol consumption is constitutional only in a case involving a DUI conviction or only when the condition is crime related." 4 Wn.3d at 506.

## CONCLUSION

We affirm.

_Cohen, J._

WE CONCUR:

_Díaz, J._

_Mann, J._